No. 92-379

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

FILED

JUN 10 1993

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

STATE OF MONTANA,

      Plaintiff and Respondent,

-v-

CHARLES FRANCIS MOSLEY, III,

      Defendant and Appellant.

---

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Edward P. McLean, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

      James Park Taylor, Missoula, Montana

      For Respondent:

      Marc Racicot, Attorney General, Helena, Montana;
Carol E. Schmidt, Assistant Attorney General,
Helena, Montana; Robert L. Deschamps III, County
Attorney, Missoula, Montana; Karen Townsend, Deputy
County Attorney, Missoula, Montana

---

Submitted on Briefs: January 21, 1993

Decided: June 10, 1993

Filed:

*[signature]*

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from the Fourth Judicial District Court, Missoula County, denying defendant's motion to suppress evidence. We affirm.

We consider the following issues on appeal:

1. Did the District Court err in denying defendant's motion to excise certain information from the application for search warrant?

2. Did the District Court err in determining that the warrant set forth sufficient facts to establish probable cause?

On June 14, 1991, a confidential informant contacted agent John Reed (Reed) of the Montana Criminal Investigation Bureau and stated that Charles F. Mosley III (Mosley) may be maintaining a marijuana grow operation at his residence on Lyon Creek Road near Missoula. This informant had previously supplied reliable information.

A week following this contact, Detective Tom Lewis of Missoula County Sheriff's Department and Agent Mark Brady from Montana Criminal Investigation Bureau conducted a drive-by of Mosley's residence which was a metal quonset hut. Two vehicles were located near the quonset hut; a license search indicated that one belonged to Charles Mosley and the other to Merita Mosley.

On June 26, 1991, Reed conducted another drive-by and observed the same two vehicles. Shortly thereafter, on July 2, 1991, Reed had contact with a citizen informant. The informant stated that in late fall or early winter of 1990 Mosley had burned an "unknown"

2

substance on his property; the substance smelled like marijuana. According to the informant, he knew what marijuana smelled like from personal experience. The informant also stated that an unknown male showed up at Mosley's residence daily. If Mosley was not home when the unknown man arrived, he would wait for Mosley's arrival.

On July 2, 1991, Detective Lewis searched the narcotics intelligence files for any former activity by Mosley. The following information from that file was included in the application for search warrant:

1. On November 9, 1981, the Missoula City Police Department received information from a confidential informant that the Defendant [Mosley] was employed at Five Valleys Bowling Alley in Missoula and was selling dangerous drugs to other people at work. This informant stated that Mosley had gotten most of the barmaids hooked on cocaine. The transactions were supposed to have occurred after work in Mosley's van.

2. On November 17, 1982, Mosley was arrested and charged with felony theft. During the booking process, a hash pipe and three ziplock baggies were found on Defendant [Mosley]. Defendant was convicted on February 8, 1983, for felony theft and possession of dangerous drugs.

3. On March 13, 1984, Detective Phil Williamson of Missoula County Sheriff's Department was contacted by another confidential informant who stated Defendant [Mosley] was selling drugs from his residence. Informant stated he had observed traffic in and out of Defendant's residence for some time and the visitor stayed for only a short period of time. Informant stated Defendant drove a van and was employed at Westside Lanes. Defendant was then on probation for possession of dangerous drugs. Informant stated that he also felt that Defendant was selling drugs at his place of employment.

4. October 29, 1985, Detective Joe Servel of the Missoula County Sheriff's Office met with one of the owners of Westside Lanes Bowling Alley. That individual stated that an employee of the bowling alley had told him Chuck Mosley was selling drugs while at work.

3

Also included in the warrant application is a statement establishing that indoor growth of marijuana plants can be detected by a search of applicable powers bills. The warrant included a description of the cyclic pattern and an explanation of why the wattage showed a pattern--marijuana requires air circulation heaters for drying the marijuana plants.

The warrant also states that on September 10, 1991, the original informant called police again with the observation that the mysterious man on the motorcycle was again at the Mosley residence. Police went to the Mosley residence and noted the registration number of the motorcycle. Upon a check of appropriate records, police determined the cycle was owned by a Thomas Campbell. A search of police records determined that Campbell had engaged in previous drug related activities. The narcotics investigation file also indicated that a search of Campbell's residence on July 15, 1991 on a different drug related charge, produced a number of marijuana plants and drug paraphernalia.

The warrant also erroneously reported that Charles Mosley had reported a trespassing incident in Missoula. This incident in reality involved Mosley's father who had the same name.

A warrant to search the Mosley residence at Lyon Creek Road was issued on September 11, 1991 by the Fourth Judicial District Court. The subsequent search disclosed the following in Mosley's residence: three paper bags of marijuana, a black garbage bag containing three-fourths pound of marijuana, a vinyl case with drug paraphernalia, a counter balance scale, zip-lock baggies (two with

4

marijuana, and one with marijuana seeds), a baggie of mushrooms, two books on marijuana cultivation, two long pipes, equipment (a fan, spray bottles, three grow lights, extension cord with timed plant light boxes), a Smith and Wesson semi-automatic handgun, and an Olympic Arms semi-automatic rifle.

On September 25, 1991, Mosley was charged with one count of criminal possession of dangerous drugs with intent to sell pursuant to felony statute § 45-9-103, MCA, and one count of criminal possession of drug paraphernalia pursuant to misdemeanor statute, § 45-10-103, MCA. Mosley pled not guilty to both counts, and filed a motion to suppress the physical evidence as well as a motion to disclose the identities of certain confidential informants. A suppression hearing was held December 18, 1991. On December 24, 1991, the District Court issued its opinion and order, denying both motions.

Mosley subsequently filed a motion for reconsideration of the court order pursuant to State v. Valley (1992), 830 P.2d 1255, 49 St.Rep. 30. The court did reconsider its earlier order in light of the Valley reasoning and concluded that the Valley decision did not dictate a different ruling from the court.

On April 22, 1992, the deputy county attorney for Missoula County filed an amended information charging Mosley with two counts of criminal possession of dangerous drugs pursuant to § 45-9-103, MCA, and one count of criminal possession of drug paraphernalia pursuant to § 45-10-103, MCA. On the same day, Mosley reversed his plea and signed a plea agreement wherein he entered a plea of

5

guilty to two counts of criminal possession of dangerous drugs and one count of criminal possession of drug paraphernalia. However, as part of this agreement, Mosley preserved his right to appeal the District Court's denial of his pretrial motions, including the motion to suppress evidence. The State agreed to recommend a suspended sentence of five years on each felony count of possession of dangerous drugs and six months on the misdemeanor count of possession of paraphernalia.

The District Court sentenced Mosley on June 15, 1992, to two suspended five year terms and one suspended six month term at Montana State Prison at Deer Lodge. On June 22, 1992, Mosley filed this appeal.

I

Did the District Court properly deny the motion to excise certain information from the warrant application?

Mosley argues that the court was required to excise any information included in the warrant application if the information is a deliberate falsehood, or was included in reckless disregard for the truth. Mosley's contention is that authorities intentionally made false statements or made statements with reckless disregard for truth when writing the application for a search warrant. Therefore, Mosley argues that the following facts should be excised from the application: 1) information from anonymous informants dated November 9, 1981, May 13, 1984, and November 29, 1985 (the information is stale and uncorroborated); 2) the statement that Thomas Campbell had a "long history of drug-

6

related offenses"; 3) the August 4, 1991 trespassing incident; and 4) the cyclic pattern of his electric bill which was merely a conclusory statement by the Officer. Mosley also argues that the application omitted the material fact that a necessary ventilation system was not observable at Mosley's residence.

The State argues that before the court is required to excise material from a warrant, Mosley must make a substantial preliminary showing that the State acted knowingly or intentionally when making a false statement or included statements with reckless disregard for the truth. Mosley has not done this, according to the State and the information of which he complains is not required to be excised.

The United States Supreme Court has determined that truthfulness of factual statements made in an application for a search warrant can be challenged. Franks v. Delaware (1978), 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667. See also State v. Sykes (1983), 194 Mont. 14, 663 P.2d 691. We adopt the Franks procedure for challenging the truthfulness of statements made in an application for search warrant as hereinafter stated and as also stated in Sykes. The defendant must first make a substantial preliminary showing that a false statement was knowingly or intentionally made, or was made with reckless disregard for the truth. Franks, 438 U.S. at 155-156. If defendant makes such a showing, and the misstatement was necessary to a finding of probable cause, a hearing must be held at defendant's request. Franks, 438 U.S. at 156. When a hearing is held, the allegation of

7

perjury or reckless disregard must be proved by defendant by a preponderance of the evidence. Once proved, the offending information must be excised from the warrant application. If after the egregious material is excised, the remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded. Franks, 438 U.S. at 156.

In order to make a preliminary showing of an intentionally made falsehood, the defendant must provide more than conclusory statements. Franks, 438 U.S. at 171. The defendant must make an offer of proof that contains affidavits, sworn statements or other reliable witness statements which tend to prove that false statements in the application were deliberately made. Franks, 438 U.S. at 171. Information contained in a warrant application will be deemed truthful when the information put forth is believed or appropriately accepted by affiant. Franks, 438 U.S. at 165.

Mosley first argues that information concerning anonymous tips dated November 9, 1981, March 13, 1984 and November 29, 1985, should have been excised because they are stale or uncorroborated. Of pivotal concern to Mosley's claim that these earlier incidents be excised is his total lack of evidence that these incidents were in fact false or were intentionally included to mislead the court. A false affidavit statement is one which misleads the magistrate [or court] into believing the existence of certain facts which enter a person's thought processes in evaluating probable cause. State v. Groff (Iowa 1982), 323 N.W.2d 204. The record contains no

affidavits, reports, or witness statements which prove that the State intentionally misrepresented these incidents in an attempt to mislead the court. Therefore, we conclude these incidents need not be excised.

Mosley also argues that the characterization of Thomas Campbell's criminal record should have been excised. Lewis stated in the application that Campbell had a long history of drug-related offenses in the Missoula area. The State argues that it used the word "offenses" to mean suspected criminal activity involving drugs. The court construed the word "offenses" to mean all known criminal activity as well as convictions.

We have already stated that the word "offense" in an affidavit in support of a search warrant means a violation of laws of Montana or its political subdivisions. State v. Kelly (1983), 205 Mont. 417, 430, 668 P.2d 1032, 1040. In an application for search warrant, the word "offense" is to be construed as a definite, known violation of the law, not an alleged violation or suspected drug-related activity. Lewis testified that he meant that Campbell had a long history of suspicion of drug-related activity. Lewis used the word "offense" erroneously.

The important fact is that a current search of Campbell's residence in July of 1991 turned up drugs and drug related equipment. The evidence found in that search is concrete and current and was capable of standing on its own without the statement of Campbell's past. Once again we conclude that Mosley did not present evidence to show that Lewis included the

9

information with an intention to mislead the court. We, therefore, conclude that there is no basis to strike the reference in the application concerning Campbell.

Mosley further contends that the trespassing incident which involved his father and not himself should have been excised from the application. The State argues that this incident was innocent error and that Mosley failed to provide evidence that the State intentionally included this information to mislead the court. Allegations of negligence or innocent mistake are insufficient to excise the alleged false information. Franks, 438 U.S. at 171. The trespassing incident is totally immaterial to the determination of probable cause for this warrant to issue. Apparently, Mosley's father has the same exact name and it is he who was involved in the trespass action. Mosley alleges that Lewis used this incident in an attempt to give the impression that Mosley gave a false address to police. But Mosley provides no evidence to indicate the truth of this allegation. We conclude that the use of this incident was innocent error and was not included intentionally to mislead the court.

Mosley next argues that the cyclic pattern of electric use statements made by Lewis must be excised because they are merely conclusory statements according to State v. Wilson (1992), 837 P.2d 1346, 49 St.Rep. 844. Further, according to Mosley, Lewis did not give his credentials for making such analyses.

We have stated that:

> Sufficient information must be presented to the magistrate to allow that official to determine probable

10

cause; his action cannot be a mere ratification of the bare conclusions of others. In order to ensure that such an abdication of the magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued.

Wilson (1992), 837 P.2d at 1348, 49 St.Rep. at 845.

In Wilson the only information about power usage in the search warrant application was the conclusory statement that defendant's power bills reflected a power use "consistent with that of a grow operation." We stated in Wilson:

No data from the record was included in the application nor any information concerning the detective's experience analyzing power usage records.

Wilson, 837 P.2d at 1347, 49 St.Rep. at 845.

In one respect, the situation we have before us is quite different. Detective Lewis expressly stated the cyclic pattern reflected by Mosley's electrical use:

The power records reflect that January 1988 the electrical consumption was 859 kilowatts and in August 1988 the electrical consumption was 1121 kilowatts. In this comparison the electrical consumption in the warmer months was higher than in January. In January 1989 the electrical consumption was 864 kilowatts whereas August the same year the consumption was 434 kilowatts. The following year, January 1990, the electrical consumption was 1,038 kilowatts while the consumption during August was 928 kilowatts. The current electrical consumption at the Mosley residence of 1,179 kilowatts is higher than the electrical consumption in January of the same year.
The electrical consumption at this residence also indicates a cyclic pattern consistent with that commonly seen with indoor marijuana grow operations. From July 1990 through May 1991, several such patterns are evident.

The one thing he did not provide is his experience analyzing power usage records. Although he stated his position of authority he did not indicate what technical expertise he possessed which would enable him to interpret the above facts. We conclude that

11

because Officer Lewis did not include in his application for search warrant any information concerning his experience analyzing power usage records he has not met the Wilson test.

However, Mosley has not presented evidence to indicate that this omission was knowingly or intentionally made. Therefore, we conclude no reason exists to excise the power usage facts from the application. However, because a sufficient foundation was not set forth, we will disregard the information of electrical power records in our further analysis under Issue II.

Mosley also argues that Lewis intentionally omitted the fact that he had not seen a ventilation system at Mosley's residence. According to Mosley, such an omission is material because marijuana requires adequate ventilation. The State contends the information was not a necessity for a warrant to issue. We agree. The omission that Mosley complains of is immaterial to an issuance of a warrant given the other information included in the warrant application.

We finally conclude that Mosley did not prove his allegations at the suppression hearing by a preponderance of the evidence. His burden of showing that any false statement was knowingly or intentionally made, or was made with reckless disregard for the truth has not been met. Therefore, we hold that the District Court did not err in denying Mosley's motion to excise certain information from the warrant application.

II

12

Did the District Court err in determining that the application for warrant set forth sufficient facts to establish probable cause?

The District Court denied Mosley's motion to suppress all physical evidence seized at his residence because the application for search warrant established probable cause. In issuing the search warrant, the District Court relied on the following incidents from the application for search warrant:

1. On June 14, 1991, a confidential informant contacted Agent Reed and stated that defendant may be maintaining a marijuana grow operation at his residence.

2. On July 2, 1991 a concerned citizen noted that Mosley had burned a substance in an outside barrel which smelled like marijuana burning.

3. On July 2, 1991, sheriff's Deputy Tom Lewis searched the Narcotics Intelligence files which revealed incidents involving drugs on November 9, 1981, November 17, 1982, March 13, 1984, and October 29, 1985.

4. On July 25, 1991, Detective Lewis applied for and received a subpoena for Mosley's power records. Detective Lewis stated that the records established a cyclic use of electricity consistent with an inside marijuana grow.

5. August 4, 1991 - trespassing incident in Missoula.

6. September 10, 1991, original informant contacted Reed about mysterious motorcycle rider. The next day the owner of the motorcycle was identified as Thomas Campbell who himself has a long drug history. The court stated that it was taking a common sense

13

approach required by Crowder, and looking only to the four corners of the application. The court indicated that taken separately, each incident alone would not equal probable cause.

> Using the practical, common sense approach required under Gates and Crowder and looking only to the four corners of the Application this Court concludes, that taking all of the items together and applying the 'totality of the circumstances' test, this Court has a 'substantial basis' to conclude that probable cause existed.

Order and Opinion, December 24, 1991.

This Court's function on appeal from the District Court's review of a search warrant is not to review de novo the court's determination that probable cause justified issuance of a search warrant; rather, the Court must presume the lower court properly issued a search warrant after subjecting the application to a "totality of the circumstances" test. State v. Baldwin (1990), 242 Mont. 176, 789 P.2d 1215. The duty of the reviewing court is to ensure that the magistrate or the lower court had a "substantial basis" to determine that probable cause existed. State v. Crowder 0(1991), 248 Mont. 169, 810 P.2d 299.

We conclude that the court had a substantial basis to determine that probable cause existed. In arriving at this conclusion, as previously stated, we are not considering the statements relative to the electrical power records. Probable cause to issue a search warrant may be based on a tip from a confidential informant. State v. Crain (1986), 223 Mont. 167, 725 P.2d 209. Here, the warrant application contained two calls from a previously accurate informant and one call from a concerned citizen. The application also contained information indicating

14

that Mosley had been previously convicted on drug charges and that a person regularly seen at Mosley's residence had been found to possess drugs and drug paraphernalia.

In determining probable cause to issue a warrant, it is not the number of statements, tips or events that is determinative. State v. Valley (1992), 830 P.2d 1255, 49 St.Rep. 30. It is the probative force of one, some or all of them. Valley, 830 P.2d at 1256, 49 St.Rep. at 31. Probable cause does not mean that the State had to provide a prima facie showing of criminal activity on Mosley's part; the State merely had to show a probability of criminal activity on Mosley's premises. See State v. Sundberg (1988), 235 Mont. 115, 765 P.2d 736.

The application provides a substantial basis that such a probability of criminal activity was occurring on Mosley's property. We hold that the District Court did not err in determining that the application for search warrant set forth sufficient facts to establish probable cause.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____
Justices

Justice Terry N. Trieweiler specially concurring in part and dissenting in part.

I concur with the majority's decision to affirm the District Court. However, I disagree with its reasons.

Specifically, I would not follow the U.S. Supreme Court's decision in *Franks v. Delaware* (1978), 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667. However, I conclude that after excising the false or inadequate information from the affidavit in support of the State's application for a search warrant, there was sufficient information to establish probable cause for the issuance of a search warrant pursuant to the totality of the circumstances test adopted in *State v. Jensen* (1985), 217 Mont. 272, 704 P.2d 45.

In *Franks*, the U.S. Supreme Court decided that under the Fourth Amendment to the United States Constitution, false information contained in an affidavit in support of an application for a search warrant need not be excised unless the defendant could establish that when the information was included, the affiant knew that it was untruthful or had a reckless disregard for the truth. The Montana Constitution provides an independent right to the citizens of this State to be free from unreasonable searches and seizures. It also provides that no search warrant shall issue without probable cause. False information provided in support of a search warrant does not provide probable cause. What difference does it make what the applicant's state of mind is when the false information is submitted? Furthermore, if false information is

16

provided in support of an application for a search warrant, how does the person whose privacy has been illegally violated prove the state of mind of the person who provided the information?

Applying the right found in the Montana Constitution to be free from unreasonable searches and seizures, I would hold that in determining whether there was probable cause for the issuance of a search warrant, false information included in the search warrant should be disregarded and only the remaining information considered by a reviewing court.

For these reasons, and based on our prior decisions, I would excise the following information from the affidavit filed by the State in support of its application for a search warrant in this case:

1.   The information contained in the files of the Missoula County Sheriff's Department (with the exception of defendant's record of convictions) for the reason that the information was stale and inadmissible pursuant to our decision in *State v. Valley* (1992), 252 Mont. 489, 830 P.2d 1255.

2.   The information alleging that defendant had contacted the sheriff's department about a trespass to his property for the reason that such information was false.

3.   The allegation that Thomas Campbell had a long history of drug-related offenses because that allegation was false. I would allow the allegation that illegal drugs were found in Campbell's residence in 1991.

17

4. The information about defendant's power usage because there was no foundation for the conclusion in the affidavit that it had any significance, and was, therefore, inadmissible pursuant to our decision in *State v. Wilson* (1992), 254 Mont. 317, 837 P.2d 1346.

The majority's adoption of the *Franks* rule cannot be reconciled with our previous approach to the use of improper or inadequate information in an application for a search warrant. In *Valley*, we held that a search warrant based on stale information did not provide probable cause. In *Wilson*, we held that a search warrant based on conclusory statements did not establish probable cause. Yet, in this case the majority is willing to adopt a rule that the statements which are blatantly false can be used to establish probable cause unless defendant can prove that the affiant had a dishonest state of mind when the information was provided to the magistrate. In Montana, false information has been elevated to a position of greater value than information which is simply stale or conclusory.

In spite of these problems with the majority opinion, I conclude that after excising the objectionable material from the application for a search warrant, there was sufficient basis to establish probable cause for the issuance of a search warrant under our previous decisions. The affidavit in support of the application established that a reliable informant believed that defendant may be maintaining a marijuana growing operation in his home. The informant described the premises where the growing

18

operation was being conducted, and that description was confirmed after an investigation by the Missoula County Sheriff's Department. A separate, citizen informant, whose reliability is presumed by our previous decisions, informed the law enforcement officers that he had observed defendant during that same year burning what he believed to be marijuana plants on his property. The defendant's file at the sheriff's office showed that in 1982 he was convicted of possession of illegal drugs. Finally, the citizen informant identified Campbell as someone who came to defendant's premises regularly at the same time of day, and Campbell was identified as someone who had recently been found to possess illegal drugs and drug-related equipment. I conclude that the cumulative effect of these facts established probable cause for the issuance of a search warrant.

For these reasons, I would affirm the judgment of the District Court.

_____
Justice

Justice Karla M. Gray joins in the foregoing concurrence and dissent.

_____
Justice

Justice William E. Hunt, Sr., dissenting.

I dissent and would reverse the conviction of the defendant because I do not believe either the United States Constitution or the Constitution of the State of Montana ever contemplated obtaining a warrant through the use of false information in the affidavit. I would reverse.

_____
Justice

20

June 10, 1993

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

James Park Taylor
Attorney at Law
111 N. Higgins, Ste. 303
Missoula, MT 59802-4401

Hon. Joseph P. Mazurek, Attorney General
Carol E. Schmidt, Assistant
Justice Bldg.
Helena, MT 59620

Robert Deschamps, III, County Attorney
Karen Townsend, Deputy
Missoula County Courthouse
Missoula, MT 59802

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy