JUSTICE NELSON
delivered the Opinion of the Court.
¶ 1 John Reesman (Reesman) appeals from two orders issued by the Eighteenth Judicial District Court, Gallatin County, which denied his motion to suppress evidence, and denied his motion to dismiss based on destruction of evidence.
¶2 We reverse and remand for further proceedings consistent with this opinion.
¶3 Reesman raises the following issues on appeal:
1. Did the District Court err when it denied Reesman’s motion to suppress evidence seized as the result of an illegal search?
2. Did the District Court err when it denied Reesman’s motion to dismiss the charges because the State destroyed evidence?
FACTUAL AND PROCEDURAL BACKGROUND
¶4 During the search of a trailer home located in Big Sky, Montana, in which Gallatin County Sheriff’s officers believed marijuana was growing in a bedroom closet, more than 100 “hits” of LSD were found in another bedroom where the Appellant Reesman lived. The search was conducted pursuant to a search warrant allegedly validated by the statements of a confidential informant and corroborated by information received from an “anonymous citizen.”
¶5 Reesman’s motion to suppress the evidence gathered in his bedroom as well as his testimony to the officers was heard by the District *411 Court on July 24,1998. The following factual scenario was set forth in the warrant application and testified to at the hearing.
¶6 On November 28, 1995, a confidential informant provided Gallatin County Detective Don Hanson (Hanson) with first-hand information concerning a variety of illegal drug-related activity at a trailer home located in Big Sky, Montana. Hanson was assigned at the time to the Missouri River Drug Task Force. The warrant application did not indicate whether the informant had provided law enforcement officers with accurate information regarding criminal activity in the past.
¶7 The informant stated that a person named Brent Hoge, or “Beau Dylan Hogge” answered the door, and escorted her to his bedroom located at the north end of the trailer. There, he allegedly revealed marijuana growing in a closet, as well as recently harvested “buds.” According to the informant, he also showed her spore-like growth in a styrofoam cup, which he claimed were mushrooms that produce the illegal hallucinogen, psilocybin. These described events allegedly took place, according to the informant, on the weekend of October 28,1995. The informant did not give information that any other person was conducting illegal activity of any type in the trailer, and she did not mention Reesman by name, or indicate that he was living in the trailer.
¶8 Hanson also testified that an “anonymous citizen,” who had provided reliable information in the past, told him that the marijuana growing operation had existed at that location for approximately one year. This information was included in the application. The application omitted, however, further detail as to whether this informant’s information came from personal observation, or under what context law enforcement personnel had received the prior rehable information.
¶9 According to testimony, neither Hanson nor any other law enforcement officer took further steps to corroborate the information supplied by the informant and anonymous citizen other than, apparently, confirming that a trailer as described by the informants was located at the given address. Hanson testified that he attempted to learn more about other residents at the trailer through telephone records, power records, and vehicles at the residence. Despite these efforts, he was unable to ascertain who owned the trailer, and no information concerning any such records was included in his application for the search warrant.
¶10 Nevertheless, Hanson applied for and obtained a search warrant for the entire trailer two days later on November 30, 1995. On *412 that same day, at approximately 11:40 a.m., the search warrant was executed by Hanson and other officers. Four persons were found in the trailer, including Reesman, as officers commenced gathering evidence pursuant to the search warrant.
¶ 11 Hanson advised Reesman of his constitutional rights pursuant to Miranda, and interviewed him in his bedroom. During this interview two other officers searched Reesman’s bedroom. Reesman signed a written “waiver of rights” form at that time, which gave the officers permission to conduct the search. The waiver form expressly included the entire residence. Reesman would contend that in signing the waiver, he believed he was only consenting to a search of his vehicle. Hanson’s report, in fact, stated that he obtained only Reesman’s consent to search the vehicle. Reesman testified that he did not understand the consent form at the time, and would not have consented to the search of his bedroom if he had been given the option. Although the waiver was sought, Hanson maintained that the original warrant validly provided that officers could search the entire trailer.
¶12 The initial search of Reesman’s bedroom produced 13 hits of LSD. Reesman then told the officers where more could be found in his room. The officers found an additional 110 hits of LSD.
¶13 On May 22, 1998, Reesman moved to suppress the evidence found in his bedroom, as well as his statements made to officers at the time, claiming that the search warrant issued for the entire trailer lacked probable cause, and that it was overbroad. At that time, Reesman pled not guilty to one count of criminal possession of dangerous drugs with intent to sell, a felony, and criminal possession of drug paraphernalia, a misdemeanor.
¶14 Following the July 24,1998 hearing, the District Court issued its Findings of Fact, Conclusions of Law, and Order. The court followed the well-established Montana rule that the determination of whether there was sufficient probable cause for a court to issue a search warrant must follow the “totality of the circumstances” test. ¶15 The court determined that corroboration of the confidential informant’s first-hand, detailed information by an anonymous tip weighed heavily in favor of the informant’s reliability, and therefore concluded that there was a substantial basis upon which the issuing court found probable cause for the search warrant. The court stated, in its conclusions of law, that “[t]he application for the search warrant provided sufficient probable cause that criminal activity was occurring at the residence named in the caption.”
*413 ¶16 The court also determined that Reesman’s consent was, ultimately, Immaterial in that the original search warrant covered the entire residence, including Reesman’s bedroom. Even so, the court concluded that “the consent was sought to only search the vehicle.”
¶ 17 Reesman ultimately pled guilty, pursuant to a plea agreement, to one count of criminal possession of dangerous drugs, which is a felony offense. He received a suspended sentence of three years. Reesman appealed the District Court’s order denying his motion to suppress evidence, as well as a denial of a motion to dismiss based on destruction of evidence. This matter was heard at oral argument on May 1, 2000.
STANDARD OF REVIEW
¶ 18 The standard of review of a district court’s denial of a motion to suppress is whether the court’s findings of fact are clearly erroneous. See State v. Kuneff, 1998 MT 287, ¶ 6, 291 Mont. 474, ¶ 6, 970 P.2d 556, ¶ 6 (citing State v. Siegal (1997), 281 Mont. 250, 257, 934 P.2d 176, 180). Further, the standard of review of a district court’s denial of a motion to suppress is whether the court’s interpretation and application of the law is correct. See State v. Hubbel (1997), 286 Mont. 200, 207, 951 P.2d 971, 975 (citation omitted).
¶19 Finally, this Court’s function as a reviewing court is to ultimately ensure that the magistrate or the lower court had a “substantial basis” to determine that probable cause existed. State v. Crowder (1991), 248 Mont. 169, 173, 810 P.2d 299, 302. It is critical in our review, however, that a magistrate’s determination that probable cause exists be paid great deference and every reasonable inference possible be drawn to support that determination. State v. Rinehart (1993), 262 Mont. 204, 211, 864 P.2d 1219, 1223 (citations omitted).
DISCUSSION
¶20 Reesman claims that, from a number of legal angles, the search warrant issued in this instance must be viewed as “fatally” defective, and that due to the destruction of evidence, the District Court erred by not dismissing this case. We conclude that the issue of whether the information supplied by the informants was sufficient to establish probable cause is dispositive, and we therefore narrow our review without reaching the other issues raised by Reesman.
¶21 Furthermore, the State concedes that, in light of the District Court’s findings and conclusions, Reesman did not validly consent to a search of his bedroom and thus the signed waiver was ineffective. *414 Therefore, if information provided in the application for the search warrant did not provide a substantial basis for a probable cause determination, the District Court’s denial of Reesman’s motion to suppress evidence must be reversed. Accordingly, we address the following issue, which we restate as follows:

Issue

Did the District Court err by concluding that the application for a search warrant, which provided a confidential in-, formant’s information supplied to law enforcement officers as well as corroboration by an anonymous citizen, created a substantial basis upon which a magistrate could determine probable cause?

¶22 The District Court concluded that “[t]he application for the search warrant provided sufficient probable cause that criminal activity was occurring at the residence named in the caption.” Reesman points to the fact that the information provided by the confidential informant found in the application was corroborated only by an “anonymous citizen,” and not by further independent police investigation. The reliability of the “anonymous” citizen, in turn, was not corroborated by any further independent investigation. Thus, he contends, the warrant application clearly failed to establish probable cause pursuant to Montana’s case law grounded in the Gates totality of the circumstances test.
¶23 Although conceding that law enforcement personnel did not personally take action to independently corroborate the two informants’ information, the State argues that the confidential informant had personal knowledge of the marijuana growing operation in Hogge’s bedroom, and her information was independently corroborated by a citizen informant who had given reliable information in the past and who reported that the marijuana growing operation seen by the confidential informant had been in effect for nearly a year. The State contends that, taken as a whole, the combination of this information is sufficient standing alone to establish probable cause for the search warrant under the totality of the circumstances test.
¶24 The core question here, therefore, is the sufficiency of the application for a search warrant. An application for a search warrant must state facts sufficient to show probable cause for the issuance of the warrant. See § 46-5-221, MCA; State v. Kuneff, 1998 MT 287, ¶ 21, 291 Mont. 474, ¶ 21, 970 P.2d 556, ¶ 21. To address the issue of proba *415 ble cause for issuance of a warrant, this Court follows the “totality of the circumstances” test set forth in Illinois v. Gates (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527. See State v. Crowder (1991), 248 Mont. 169, 173, 810 P.2d 299, 302. Under this test, to determine whether a search warrant should be issued, the judge evaluates the facts asserted within the four corners of the application and makes a practical, common-sense decision as to whether there is a fair probability that incriminating items will be found in the place to which entry is sought. See State v. Worrall, 1999 MT 55, ¶ 28, 293 Mont. 439, ¶ 28, 976 P.2d 968, ¶ 28 (citing State v. Sundberg (1988), 235 Mont. 115, 119, 765 P.2d 736, 739).
¶25 As a reviewing court, we too must look solely to the information given to the impartial magistrate and to the four corners of the search warrant application. See Crowder, 248 Mont. at 173, 810 P.2d at 302 (citing Sundberg, 235 Mont. at 121, 765 P.2d at 740). We have often stated, however, that in so doing we must refuse to review a search warrant application sentence by sentence; rather, we must examine the entire affidavit to determine whether the issuing magistrate had a substantial basis to conclude that probable cause existed. State v. Hulbert (1994), 265 Mont. 317, 323, 877 P.2d 25, 29 (citation omitted).
¶26 By no means is the issue raised here novel. Yet, as evidenced by the parties’ briefs as well as their oral arguments before this Court, our case law as a whole creates an appearance of convolution. The cases cited by both parties reveal a broad spectrum of factual scenarios where information is provided by “anonymous” informants who have personally witnessed criminal activity and “confidential” informants who have not, but are nevertheless deemed “reliable”— or vice versa. Often “concerned citizens” offer information regarding what they have seen or heard regarding actual criminal activity, or merely what they regard as suspicious activity. At the receiving end of such information are law enforcement officers who may choose to follow up on these tips and interviews, utilizing a variety of investigatory tools. Eventually, the “totality’ of the gathered information may be drafted into an application for a search warrant, and, at some point, a threshold is crossed: the independent magistrate, based on the information contained within the four corners of the application determines that, yes, probable cause exists and a citizen’s person or property may be searched by law enforcement officers.
¶27 Upon closer review, however, a synthesis of our case law chalks a fairly uniform equation for determining whether an informant’s *416 statements, without further law enforcement corroboration or investigation, are sufficient to establish probable cause. True, we must observe the underlying principle of the Gates test, that this “totality of the circumstances approach” by design resists “any rigid demand that specific tests be satisfied by every informant’s tip.” State v. Kelly (1983), 205 Mont. 417, 439, 668 P.2d 1032, 1044 (quoting from Illinois v. Gates) (emphasis added). Nevertheless, based on 17 years of precedent laid down by this Court since we adopted the Gates test in Kelly and State v. O’Neill (1984), 208 Mont. 386, 679 P.2d 760, certain indelible threshold rules have emerged. In turn, these rules may be merged into a fairly coherent step-by-step analysis for determining whether an informant’s information is sufficient to establish probable cause.

A. The anonymous informant

¶28 First, a threshold question may be asked: is the informant anonymous? This means that law enforcement officers have no idea who is providing the information. A phoned-in Crimestoppers “tip” is one frequent, common example. If the answer is yes, then independent corroboration of the informant’s information is required. This Court has routinely stated that “[c]orroboration of an informant’s information through other sources is necessary when the information is hearsay or the informant is anonymous.” State v. Rinehart (1993), 262 Mont. 204, 211-12, 864 P.2d 1219, 1223-24 (concluding that an “anonymous Crimestoppers’ tip, by itself, is not adequate to support probable cause without further investigation to verify or corroborate the information contained in the tip,” and citing State v. Valley (1992), 252 Mont. 489, 493, 830 P.2d 1255, 1257).[1]

B. Personal observation

¶29 If the informant is not anonymous, we may then proceed to a second threshold question: is the informant’s information based on *417 his or her personal observation of the described criminal activity? In other words, is the basis of the information hearsay? See Rinehart, 262 Mont. at 212, 864 P.2d at 1224 (stating that an “informant’s personal observation of criminal activity does not constitute hearsay evidence”); State v. Kaluza (1995), 272 Mont. 404, 411, 901 P.2d 107, 111 (concluding that informants’ information in warrant application contained no reference to personal observation or personal knowledge, and was therefore of “no value”). See also State v. Wilson (1992), 254 Mont. 317, 319, 837 P.2d 1346, 1347 (concluding that “bare assertion” of personal observation of marijuana growing in defendant’s house failed to sufficiently describe the interior of the house and the location of the marijuana growing operation).
¶30 If the answer is no, then again independent corroboration is required.

C. Reliability

¶31 If the information of actual criminal activity was gleaned from the personal observations of a non-anonymous person, then we may proceed to a final threshold question: is the informant a reliable source of such information? This question, in turn, breaks down into three clearly identifiable scenarios within our search and seizure jurisprudence.

1. The confidential informant

¶32 If an informant is identified in a law enforcement officer’s application for a search warrant as a “confidential informant,” he or she must have provided reliable and accurate information to officers in the past in order for the information to serve as a basis for determining probable cause without further corroboration. This Court has held that a “sworn statement [by a law officer] that an informant has been reliable and provided accurate information on other occasions is sufficient to establish that the informant is reliable.” Kaluza, 272 Mont. at 410, 901 P.2d at 111 (citations omitted). See also Rinehart, 262 Mont. at 212, 864 P.2d at 1223-24 (concluding that a search warrant application provided a substantial basis to conclude probable cause existed to issue the search warrant based on officer’s statement that informant was reliable in the past); State v. Walston (1989), 236 Mont. 218, 223, 768 P.2d 1387, 1390 (determining that “information of a criminal activity known from observation by a previously reliable informant... is sufficient to establish the probability of criminal activity without outside investigation and verification of the reported information”).

*418
2. The admission against interest

¶33 Alternatively, if the informant makes an unequivocal admission against interest, this Court has likewise held that further corroboration is unnecessary. See State v. Adams (1997), 284 Mont. 25, 37, 943 P.2d 955, 962 (concluding that admissions against interest regarding participation in setting up a marijuana growing operation, “without any further corroboration,” provided the district court with a substantial basis for concluding that probable cause supported the search warrant). See also State v. Sundberg (1988), 235 Mont. 115, 121, 765 P.2d 736, 740 (quoting from United States v. Harris (1971), 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723, that “[ajdmissions of crime, like admissions against proprietary interests, carry their own indicia of credibility — sufficient at least to support a finding of probable cause to search”).

3. The concerned citizen.

¶34 Finally, if the informant was motivated by “good citizenship” and the information provided demonstrates a sufficient degree of the nature of the circumstances under which the incriminating information became known, then the informant’s disclosures are deemed a reliable basis for determining probable cause. This Court has stated that a citizen informant is presumed reliable and such reliability “is generally shown by the very nature of the circumstances under which the incriminating information became known.” State v. Valley (1992), 252 Mont. 489, 493, 830 P.2d 1255, 1258 (citing State v. Niehaus (Iowa 1990), 452 N.W.2d 184, 189). See also State v. Worrall, 1999 MT 55, ¶¶ 20-21, 293 Mont. 439, ¶¶ 20-21, 976 P.2d 968, ¶¶ 20-21 (concluding that child witness was reliable in providing information of discovering marijuana growing on defendant’s property while snake hunting); State v. Oleson, 1998 MT 130, ¶ 14, 289 Mont. 139, ¶ 14, 959 P.2d 503, ¶ 14 (stating that information motivated by good citizenship is accepted as reliable for purposes of determining probable cause to issue a search warrant).
¶35 If the ultimate answer under the foregoing examinations of reliability is no — that the informant is not a reliable source of such information — then once again independent police corroboration is required. If the answer to the question of reliability is yes, then based on the informant’s information alone, without corroboration, an application for a search warrant may supply the magistrate with a substantial basis for finding probable cause and, consequently, issuing the search warrant. See Walston, 236 Mont. at 223, 768 P.2d at 1390.
*419 ¶36 Naturally, the foregoing analysis does not bar a defendant from challenging the warrant on other grounds, such as staleness or the inclusion of incorrect or misleading information in the application for a warrant. Likewise, a defendant may challenge whether the law enforcement officer’s independent corroboration or investigation was sufficient within the context of a court’s totality of the circumstances analysis. Such corollary grounds, however, are not at issue here.
¶37 In this instance, the confidential informant was not “anonymous,” in that she met face-to-face with Detective Hanson, and was subjected to his questioning. Next, her observations, no doubt, were based on personal observations. She stated that she visited the trailer home in question, met with Hogge, and viewed first-hand the marijuana growing in a bedroom closet, describing the trailer home and its interior with sufficient particularity. Thus, the first two threshold steps are clearly satisfied.
¶38 At step three, however, the application for a search warrant did not indicate that as a “confidential informant,” the person was known by law enforcement personnel to have been reliable and a source of accurate information in the past, prior to her meeting with Detective Hanson on November 28, 1995. How she became classified by Gallatin County Sheriff’s officers as “Confidential Informant (Cl) 95-1128” remains a mystery (disregarding, as we must, suppression hearing testimony that provides information beyond the “four corners” of the application originally viewed by the issuing magistrate in this instance). Next, the application did not indicate that the statements were an admission against interest by a co-conspirator or a customer of illegal drugs. Finally, the application simply does not indicate first, that the person was acting as a “concerned citizen,” and second, and more importantly, under what circumstances the informant went to and entered the trailer that day and subsequently was shown the incriminating information she later shared with Detective Hanson. Was she there to clean the carpet? Collect rent? Purchase a gram or two of the fresh harvest? Was she acting under law enforcement direction? Why did Hogge so willingly show her his illegal operation? We do not know, and, accordingly, neither did the reviewing magistrate.
¶39 We hold, therefore, that without further, independent corroboration or investigation, the confidential informant’s information found within the search warrant application here must fail as supply *420 ing the magistrate with the substantial basis necessary for the determination that probable cause existed.

D. Independent corroboration

¶40 The State nevertheless argues that independent corroboration or investigation of the confidential informant’s information was supplied to the magistrate in Detective Hanson’s application by an “anonymous citizen, who has provided reliable information in the past.” At oral argument, the State asserted that under our decisions in Rydberg, (1989) 239 Mont. 70, 778 P.2d 902, Oleson, and Deskins, (1990) 245 Mont. 158. 799 P.2d 1070, this Court has a sufficient basis to validate the probable cause showing here. The State further contends that there is “nothing in the [Deskins] opinion which suggests that a tip from a citizen informant whose reliability is known to officers cannot serve to corroborate information from a confidential informant unless there is independent corroboration of the citizen’s tip as well.”
¶41 Indeed, we stated in Deskins that “[p]ersonal observation of criminal activity by an informant whose reliability can be established provides probable cause.” State v. Deskins (1990), 245 Mont. 158, 163, 799 P.2d 1070, 1073 (emphasis added). Contrary to the State’s argument, however, the corroborating information in Deskins was not supplied by another, uncorroborated source of information, but from the independent investigation of a detective. In that case, an anonymous informant supplied investigators with detailed first-hand information of a marijuana growing operation. In turn, officers independently verified that Deskins resided at the home identified by the caller, and proceeded to gather evidence of power consumption records, a synopsis of which was contained in the warrant application. See Deskins, 245 Mont. at 162, 799 P.2d at 1072.
¶42 The same factual scenario is present in Rydberg and Oleson. In both instances, officers took independent action to further corroborate information supplied by the informants. See State v. Rydberg (1989), 239 Mont. 70, 73, 778 P.2d 902, 904 (criminal background checks); Oleson, ¶ 10 (vehicle registration and criminal scene investigation).
¶43 As a underlying general rule, further independent corroboration or investigation by law enforcement personnel is the panacea for most warrant applications where information is supplied by an informant. In State v. Walston, we identified this key element expressed in Gates, where the United States Supreme Court determined that an *421 anonymous letter combined with other police findings established probable cause. We recognized the Gates Court’s observation that the subsequent investigation conducted by law enforcement personnel verified the facts stated by the informant, which in turn justified the issuing magistrate’s conclusion that a probability of criminal activity existed. See Walston, 236 Mont. at 222, 768 P.2d at 1389-90. See also Deskins, 245 Mont. at 159-60, 799 P.2d at 1071 (anonymous tip corroborated by extensive police investigation); Crowder, 248 Mont. at 174, 810 P.2d at 302 (concluding that although information in warrant application combined with officer’s investigation was “less complete than would be desirable,” it nevertheless served as a sufficient basis for probability that contraband would be found at residence).
¶44 In this sense, “corroboration” or “further investigation” as used throughout the foregoing case law — contrary to the State’s argument here — infers independent police work of some kind. See Crowder, 248 Mont. at 173, 810 P.2d at 302 (quoting Gates, 462 U.S. at 241-42, 103 S.Ct. at 2334, 76 L.Ed.2d at 550, and stating that “[t]he United States Supreme Court emphasized the ‘value of corroboration of details of an informant’s tip by independent police work’ establishing a ‘substantial basis for crediting the hearsay” ”) (emphasis added). See also Valley, 252 Mont. at 493, 830 P.2d at 1257 (stating that “common sense” dictates further law enforcement investigation to verify or corroborate the tips received from informants).
¶45 In fact, our case law offers numerous successful examples of such corroboration or further investigation that established the sufficiency of an informant’s information. For example, in Deskins the officers through various sources including an investigative subpoena verified home ownership, a business licence, vehicle registration, and utility records indicating increased power consumption after receiving án anonymous tip of a marijuana growing operation. Deskins, 245 Mont. at 159-60, 799 P.2d at 1071. Officers have also included in their warrant applications rental information which they have independently verified. See Adams, 284 Mont. at 30, 943 P.2d at 958. Numerous cases discuss warrant applications that describe a variety of investigatory drive-bys and visits to a residence to confirm addresses, house descriptions, and other information supplied by informants. See, e.g., State v. Holstine (1993), 260 Mont. 310, 312-13, 860 P.2d 110, 111-12 (officer observes covered window and smells growing marijuana from outside of trailer home); State v. Hook (1992), 255 Mont. 2, 3, 839 P.2d 1274, 1275 (officer confirms address and drives by house to confirm *422 description of exterior); Kuneff, ¶ 7 (officers admitted into home and observe paraphernalia). Similarly, in some instances, officers have investigated the scene of an alleged crime, and gathered evidence that verifies the informant’s information. See Oleson, ¶ 10. Another routine piece of information indicating police corroboration is criminal background checks. See, e.g., State v. Mosley (1993), 260 Mont. 109, 114, 860 P.2d 69, 72; Rydberg, 239 Mont. at 73, 778 P.2d at 904. Characteristically, none of these acts of independent law enforcement corroboration or investigation require further corroboration by an officer. But see Kaluza, 272 Mont. at 411, 901 P.2d at 111 (determining that power usage information gathered by police that lacked “detailed comparisons” with average and previous resident’s usage was insufficient); Wilson, 254 Mont. at 319, 837 P.2d at 1347 (information about power usage in search warrant application was conclusory). Further, although under our decision in Rinehart a Crimestoppers tip may provide some corroboration and indicate the veracity of other information provided, an anonymous source as well as hearsay information nevertheless requires further corroboration. See Rinehart, 262 Mont. at 212, 864 P.2d at 1224.
¶46 The State concedes that the statements of the confidential informant in the search warrant application here “needed to be independently corroborated.” The State then attempts to supplant actual law enforcement officers’ corroboration with information from an anonymous citizen who, uncannily, “provided reliable information in the past.” Notwithstanding this obvious contradiction, we hold that a source of information that requires further corroboration under the analysis set forth here cannot serve as a source of independent corroboration or investigation that transforms another informant’s information into a basis for establishing probable case. As our case law makes clear, an anonymous source always requires corroboration. See Worrall, ¶ 22.
¶47 Finally, the reference to the “anonymous citizen” in the application provides no indicia of reliability of a citizen informant in terms of personal observation, or the circumstances under which the person made his or her personal observations. Thus, even ignoring the “anonymous” status of the citizen informant, the inclusion of this piece of information offers no corroboration value to the warrant application as a whole.
¶48 Accordingly, we conclude that the application for a search warrant did not provide a substantial basis for the conclusion that *423 probable cause existed for the search of the Big Sky trailer home in which Reesman resided. We hold, therefore, that the District Court erred in denying Reesman’s motion to suppress evidence obtained during the execution of the search warrant. Reversed and remanded for further proceedings consistent with this opinion.
JUSTICES LEAPHART, HUNT and TRIEWEILER concur.

. We note that this rule as it appears in more recent case law includes the term “only” meaning that only when an informant is anonymous or provides hearsay must further corroboration be supplied by law enforcement officers. See State v. Worrall, 1999 MT 55, ¶ 22, 293 Mont. 439, ¶ 22, 976 P.2d 968, ¶ 22 (citing State v. Adams (1997), 284 Mont. 25, 37, 943 P.2d 955, 962, which cites to State v. Rinehart (1993), 262 Mont. 204, 212, 864 P.2d 1219, 1224). As the following discussion indicates, the inclusion of this term misconstrues the rule as it originally appeared in Rinehart. We observe, therefore, that under Worrall, Adams, and Rinehart, further corroboration is always required when an informant is anonymous or provides mere hearsay, and yet further corroboration may be required in other instances as well.