No. 05-540

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 56

STATE OF MONTANA,

            Plaintiff and Respondent,

    v.

DOUGLAS B. DUTTON,

            Defendant and Appellant.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
In and For the County of Lincoln, Cause No. DC 04-108
Honorable Michael C. Prezeau, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            S. Charles Sprinkle, Sprinkle Law Firm, Libby, Montana

        For Respondent:

            Hon. Mike McGrath, Attorney General; Micheal S. Wellenstein,
Assistant Attorney General, Helena, Montana

            Bernie Cassidy, Lincoln County Attorney; Robert Slomski, Deputy
County Attorney, Libby, Montana

                 Submitted on Briefs:  December 20, 2006

                            Decided:  February 27, 2007

Filed:

                      _____
                               Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1  Douglas Dutton pled guilty in the Nineteenth Judicial District Court, Lincoln County, to criminal production or manufacture of dangerous drugs, reserving his right to appeal the District Court's denial of his motion to suppress evidence.  Dutton appeals and we affirm.

¶2  The issue on appeal is whether the application for a search warrant established probable cause for the Justice Court to issue the search warrant.

BACKGROUND

¶3  On December 1, 2004, Lincoln County Sheriff's Office detective Shane Hight asked the Lincoln County Justice Court to issue a warrant to search property owned by Douglas Dutton.  Hight's application for a search warrant began by outlining his eight years of experience as a peace officer and over 100 hours of training in the area of dangerous drugs. The application stated Hight had been specifically assigned to investigate and enforce Montana's dangerous drug laws since July of 2004.  It then set forth the following facts.

¶4  In March of 2004, Crime Stoppers received an anonymous letter describing a clandestine drug lab run by Dutton at his home, for which the writer provided the street address.  In July of 2004, Hight and another detective inquired at a local convenience store where a store clerk told them a man named Doug came in and bought bottles of HEET and two or three boxes of matches at a time.  The clerk gave the detectives a vehicle license number which they determined was registered to Dutton.  On November 20, 2004, a Troy, Montana, police officer filed a report stating Dutton had purchased--at three different stores

2

on the same day--precursors needed to manufacture methamphetamine: two boxes of pseudoephedrine, hydrogen peroxide, 4 boxes of matches and a bottle of HEET.

¶5 Several days after receiving that report, Hight researched property ownership records in Lincoln County and obtained the address of real property and a trailer owned by Dutton, which was the same address contained in the anonymous letter to Crime Stoppers. Two days later, Hight was contacted by another officer who told him Dutton had purchased two boxes of matches and a bottle of HEET at an area convenience store. On November 26, 2004, Hight observed Dutton go into the local IGA store, where he purchased nasal decongestant and matches. Four days later, another detective collected a receipt from a local hardware store where Dutton had purchased Red Devil lye, paper towels, and a box of pseudoephedrine tablets. Finally, Hight stated:

> Through training and experience, your Affiant has reason to believe that Dutton is operating a clandestine lab in which he is manufacturing methamphetamine. The amount of pseudoephedrine hydrochloride, HEET, matches, Lye and other essential items are well beyond the amount consistent with normal household consumption.

Hight attached to his application for a search warrant a brochure prepared by the Montana Department of Justice, which identified matches, engine starter, Red Devil lye, and pseudoephedrine tablets as substances frequently found at methamphetamine lab sites.

¶6 The Justice Court issued a search warrant for the premises, curtilage, outbuildings and vehicles at Dutton's address. Based on items found during the search, the State of Montana charged Dutton by Information filed in the District Court with criminal production or manufacture of dangerous drugs, operating an unlawful clandestine laboratory, criminal

3

possession of precursors to dangerous drugs, felony and misdemeanor criminal possession of dangerous drugs, and use or possession of property subject to criminal forfeiture.

¶7 Dutton moved to suppress the evidence seized in the search, arguing that the pre-November of 2004 events set forth in the warrant application were stale and that the remainder of the application did not constitute sufficient probable cause to invade his right to privacy. The District Court rejected Dutton's staleness argument and ruled that, under the totality of the circumstances, the Justice Court did not err in concluding the application for a search warrant established probable cause to believe evidence of a crime would be discovered at Dutton's property.

¶8 Dutton and the State entered into an agreement pursuant to which Dutton pled guilty to the manufacture or production of dangerous drugs and the State agreed to dismiss the remaining charges against him. The District Court entered judgment, and Dutton appeals.

STANDARD OF REVIEW

¶9 Courts review the issuance of a search warrant to insure that the issuing judicial officer had a substantial basis to determine that probable cause existed. *State v. Barnaby*, 2006 MT 203, ¶ 30, 333 Mont. 220, ¶ 30, 142 P.3d 809, ¶ 30 (citation omitted). In other words, district courts reviewing the issuance of search warrants by justice courts utilize the same standard as this Court uses in reviewing search warrants issued by district courts.

DISCUSSION

¶10 **Did the application for a search warrant establish probable cause for the Justice Court to issue the search warrant?**

¶11 The Fourth Amendment to the United States Constitution and Article II, Section 11 of the Montana Constitution allow a judge or magistrate to issue a warrant to search a person or that person's home, papers or effects only upon a showing of probable cause. We use the "totality of the circumstances" test set forth in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317 (1983), to determine whether probable cause exists. *See Barnaby,* ¶ 29. Under that test, the issuing judicial officer must make a practical, common-sense decision, given all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information, of whether there is a fair probability that contraband or evidence of a crime will be found in the place described in the affidavit. *Barnaby*, ¶ 29, *citing Gates*, 462 U.S. at 238, 103 S.Ct. at 2332.

¶12 Dutton claims the application for a search warrant in this case was defective in two respects. He first argues that the information in the Crime Stoppers tip from March of 2004 was stale, advancing *State v. Anderson*, 1999 MT 60, 293 Mont. 490, 977 P.2d 983.

¶13 In *Anderson*, our discussion of staleness related to an informant's tip that the defendant had been arrested on two prior occasions--five years earlier, and again seven months earlier--for possession of marijuana with intent to sell. We concluded the information about the prior arrests was not stale when considered together with the discovery of methamphetamine, moments before the search of the defendant's person, pursuant to a warrant to search the trailer where the defendant was living. *Anderson*, ¶ 15. We noted that a determination of whether information is too stale to be considered in establishing probable cause depends largely on the nature of the activity at issue. We further noted that, where

5

information reveals that the possession and distribution of dangerous drugs by a person is a protracted and continuing activity, the passage of time between the conduct and the probable cause determination becomes less significant. *Anderson*, ¶ 14.

¶14 The staleness discussion in *Anderson* does not support Dutton's arguments. Indeed, it establishes that the issuing Justice Court properly considered the Crime Stopper tip from March of 2004. Here, the Crime Stopper tip was received nine months before the search warrant was issued. In addition to that incident, the application for a search warrant also included information about an incident five months before the warrant was issued and considerable information that was only days or weeks old at the time of the warrant application. We conclude the District Court correctly rejected Dutton's staleness argument.

¶15 Dutton also claims the warrant application is "rife with speculation," citing *State v. Reesman*, 2000 MT 243, 301 Mont. 408, 10 P.3d 83, *overruled in part, Barnaby*, ¶ 42, for the principle that a tip from an anonymous source must be independently corroborated through other sources. Dutton states that "[o]ther than [ ] conclusory allegation[s] based on Hight's personal opinion, there is nothing to connect Dutton's purchases to anything of a criminal nature whatsoever." Dutton apparently refers to Hight's assertion in the search warrant application that he believed Dutton was purchasing various items as precursors to manufacture of methamphetamine.

¶16 In *Reesman*, a search warrant was issued based on information provided by a confidential informant and corroborated by an anonymous citizen. We ruled that a confidential informant's information to law enforcement officers, corroborated only by

anonymous citizens, did not provide a substantial basis for a conclusion that probable cause existed to issue a search warrant. *Reesman*, ¶ 46 (citation omitted).

¶17 Dutton has not referenced anything in *Reesman* which supports his argument that the observations and opinions of Hight--an identified, trained law enforcement officer rather than a confidential informant--were an inadequate basis for issuing the search warrant. Indeed, independent police corroboration "represents a key element in determining whether probable cause exists" to issue a search warrant. *Barnaby*, ¶ 42. Here, the bulk of the information in the application for a search warrant concerned Hight's and other law enforcement officers' observations of and investigations concerning Dutton's purchases of quantities of precursors needed to manufacture methamphetamine, escalating to nearly daily observations in the days just before Hight applied for the search warrant.

¶18 The key question when evaluating probable cause is whether the application as a whole supports a determination of probable cause. *Barnaby*, ¶ 39 (citation omitted). In reviewing the issuance of the search warrant and denying Dutton's motion to suppress, the District Court stated that "[w]hen each piece of evidence in this case is viewed in conjunction with every other piece of evidence, it is disingenuous to describe Dutton's purchasing activity as consistent with the 'average consumer.'" We agree. Viewing the facts presented in the search warrant application in a practical, common-sense manner, we conclude the Justice Court had a substantial basis for determining that probable cause existed to search Dutton's address. We hold, therefore, that the District Court properly denied Dutton's motion to suppress.

¶19    Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ JOHN WARNER