No. 88-591

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

STATE OF MONTANA,

        Plaintiff and Respondent,

   -vs-

DAVID ARTHUR DePUE,

        Defendant and Appellant.

APPEAL FROM:  District Court of the Third Judicial District,
In and for the County of Powell,
The Honorable Ted L. Mizner, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        C.F. Mackay, Anaconda, Montana

    For Respondent:

        Hon. Marc Racicot, Attorney General, Helena, Montana
        Kathy Seeley, Asst. Atty. General, Helena
        Christopher G. Miller, County Attorney, Deer Lodge,
        Montana

Submitted on Briefs:  April 6, 1989

Decided: June 1, 1989

Filed:

_____
       Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This appeal arises from a conviction entered in the Third Judicial District Court, Powell County, the Honorable Ted L. Mizner presiding. Following a bench trial, defendant was found guilty of aggravated assault and now appeals. We affirm.

Myron Cunningham, the victim, was a prisoner at the Montana State Prison in Deer Lodge, Montana. On August 17, 1987, as he walked through the prison yard, Mr. Cunningham was struck in the eye allegedly by defendant, David DePue. Initially believing the injury to be minor, Mr. Cunningham reported to the infirmary doctors that he had been hit in the eye with a baseball. Later in the evening, Mr. Cunningham informed doctors that someone had struck him, but refused to identify his assailant. On August 21, 1987, upon learning the injury would result in the loss of his eye, Mr. Cunningham identified defendant as the assailant.

Based upon the assault allegations, defendant was placed on temporary lock-up status within the maximum security unit. In compliance with the Inmate Rules and Guidelines, prison officials conducted a reclassification hearing. Essentially, the hearing gives an inmate notice of the reason he is being moved to another part of the prison. At the outset of the hearing, prison official Tom Forsyth commented to defendant that charges may be filed. Immediately, defendant responded "[f]or what? I only used my fist." Thereafter, officials instructed defendant not to volunteer any information. The hearing proceeded without defendant having been read his Miranda warnings. Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

2

At trial, defendant moved to suppress all testimony concerning the incriminating statement, claiming the statement was made in violation of his Miranda rights. After hearing the disputed testimony and oral arguments by both parties, the District Court denied the motion, concluding defendant's statement was not made in response to any "interrogation." Thereafter, the District Court heard evidence, including the testimony of the victim, conflicting statements of two other prison inmates, and medical testimony of the infirmary physician. On August 23, 1988, the District Court entered judgment finding defendant guilty of aggravated assault.

The defendant presents two issues for our review:

1. Did the District Court err when it allowed testimony concerning the defendant's incriminating statement made during the reclassification hearing prior to the defendant being informed of his Miranda rights?

2. Did sufficient evidence exist to convict defendant of the offense of aggravated assault?

At trial, the District Court admitted the testimony of Tom Forsyth, a prison official present during defendant's reclassification hearing. Mr. Forsyth testified that defendant, after learning that charges may be filed as a result of the alleged assault, immediately remarked "[f]or what? I only used my fist." This comment was made prior to a reading of Miranda guarantees. Defendant contends the statement was improperly admitted into evidence during his criminal trial and in violation of his privilege against self-incrimination.

Miranda requires an individual "taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning," be notified of "his right of silence and . . . assure[d] that the

exercise of the right will be scrupulously honored . . ." Miranda, 384 U.S. at 478-79, 86 S.Ct. at 1630, 16 L.Ed.2d at 726. We do not question the fact that defendant was in custody when the incriminating statement was made. State v. Dannels (Mont. 1987), 734 P.2d 188, 44 St.Rep. 472. Rather, we examine defendant's assertions of "interrogation."

The Defendant argues our decision in State v. Harris (1978), 176 Mont. 70, 576 P.2d 257, controls the outcome of the present appeal. In Harris, prison officials discovered a knife in a cell shared by inmates Harris and Hendricks. A formal disciplinary hearing was scheduled and each inmate was provided a lay-advisor to assist in the hearings. During Hendricks' hearing, Harris made incriminating statements in response to questions asked by the lay-advisor. These statements were later used against Harris during a criminal trial. On appeal of his conviction, we found the constitutional guarantees announced in Miranda applicable:

> [T]he prison disciplinary hearing was conducted by prison officials for the purpose of ascertaining inmate responsibility for prison offenses punishable under the Inmate Rules and Guidelines. No notice of potential criminal prosecution was announced to Harris until after he uttered the incriminating statements at Hendricks' disciplinary hearing. The constitutional guarantees of the Fifth Amendment, . . . cannot be subverted under the guise Harris knowingly and voluntarily uttered the incriminating statements.

Harris, 576 P.2d at 258.

Defendant's reliance upon Harris is misplaced. The cited case concerned statements elicited from questions asked during a formal prison disciplinary hearing. In the instant case, no questions were asked defendant, and testimony at trial indicated that prison officials seldom make inquiries

4

of the inmates regarding alleged incidents. Rather, the hearings simply give notice and determine future placement within the prison.

In State v. Ryan (1979), 182 Mont. 130, 595 P.2d 1146, we found that statements made by defendant prior to his arrest were not the product of custodial interrogation. In Ryan, four police officers arrived at defendant's home to execute a search warrant. The warrant authorized the officers to search Ryan's home for various firearms which defendant had earlier reported stolen and for which he had received insurance compensation. Upon reading a copy of the warrant, defendant told the officer, "[w]ell, you guys have got me anyway. I will just show you where the guns are at." Ryan escorted the officers to his bedroom, and pointed at the closet, and said, "[t]he guns are in there." When the officers began checking the serial numbers on the various weapons, defendant told them that there was no sense in writing them down because he had altered them after submitting the burglary report. Thereafter, the officers placed Ryan under arrest and read defendant his Miranda warnings. On appeal, we found that "[w]here the entire situation was free from any coercion or deprivation of freedom of action by the law enforcement officers and the statements were not the result of interrogation, the requirements of Miranda were not applicable." Ryan, 595 P.2d at 1149, citing Oregon v. Mathiason (1977), 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714.

As was pointed out in Miranda, a confession which is truly voluntary is not foreclosed from evidence because the statement was made before the person confessing had been warned of his rights:

> [A]ny statement given freely and
> voluntarily without any compelling

5

> influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated . . . Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.

Miranda, 384 U.S. at 478, 86 S.Ct. at 1630, 16 L.Ed.2d at 726. Defendant was not questioned at the reclassification hearing. We find defendant's statement was a voluntary statement outside the application of Miranda.

Next, we turn to defendant's second claim. Our standard of review when presented with a challenge to the sufficiency of the evidence is "[w]hether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. McDonald (Mont. 1987), 734 P.2d 1216, 1217, 44 St.Rep. 593, 595, citing Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573; State v. Rodriguez (Mont. 1981), 628 P.2d 280, 38 St.Rep. 578F. This standard gives responsibility to the trier of fact to "[r]esolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573.

Defendant contends the evidence presented at trial was insufficient to support a conviction. Defendant argues that the conviction is based solely on the word of a convicted felon, and for this reason, we should view Mr. Cunningham's testimony with distrust. However, we decline to engage in a battle over the credibility of witnesses. Rather, the

6

credibility of witnesses and the weight assigned to their testimony is left to the trier of fact. State v. Green (1984), 212 Mont. 20, 685 P.2d 370. Of the three inmates testifying, the District Court chose to accept the victim's testimony.

At trial, Mr. Cunningham testified to the ill will which existed between himself and defendant prior to the assault, including an earlier threat. Additionally, Mr. Cunningham stated that after he was hit in the eye, he saw defendant hide something in his pocket, giving Mr. Cunningham the indication that he had been struck with some sort of an instrument.

Besides the victim's testimony, other evidence supports the conviction. Dr. Ridgeway testified that the injury resulted from a rupture of the orbit of the left eye. While Dr. Ridgeway stated that a large foreign object embedded in the seam of a baseball could have caused the injury, nonetheless, he doubted that the arc of a thrown ball could have penetrated deep enough, making a baseball an unlikely mechanism. Finally, we view defendant's incriminating statement made during the reclassification hearing strong evidence to support his conviction.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

7

C. C. Gulbrandson,

John C. Sheehy
Justices

8