No. 03-690

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 272

STATE OF MONTANA,

       Plaintiff and Respondent,

   v.

GREGORY EDWARD MEYER,

       Defendant and Appellant.


APPEAL FROM:    District Court of the Eleventh Judicial District,
                    In and for the County of Flathead, Cause No. DC-02-367 (A)
                    The Honorable Ted O. Lympus, Judge presiding.


COUNSEL OF RECORD:

       For Appellant:

       Glen Neier, Neier Law Firm, Kalispell, Montana

       For Respondent:

       Hon. Mike McGrath, Attorney General; Jim Wheelis, Anthony Johnstone, Assistant Attorneys General, Helena, Montana

       Ed Corrigan, Flathead County Attorney; Dan Guzynski, Deputy County Attorney, Kalispell, Montana


               Submitted on Briefs:  April 28, 2004

                       Decided:  September 28, 2004

Filed:

_____
                    Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 Gregory Edward Meyer (Meyer) appeals from an order of the Eleventh Judicial District Court, Flathead County, entered on May 20, 2003, denying Defendant Meyer's motion to suppress. We affirm.

¶2 We address the following issue on appeal:

¶3 Did the District Court err in concluding the search warrant executed on Meyer's residence was supported by probable cause and denying Meyer's motion to suppress on that basis?

BACKGROUND

¶4 On October 18, 2002, a search warrant was issued for Meyer's residence in Columbia Falls, Montana. The search warrant authorized the search for the military explosive Composition 4 (C4), and any other evidence related to the crime of possessing explosives. The search warrant application was based on a tip from an informant who wished to remain unnamed but whose identity was known to law enforcement. Law enforcement executed the search warrant October 22, 2002. Meyer was not home but arrived shortly after officers initiated the search. Once informed of the reason for the search, Meyer told two officers where the suspected material was located in his residence. Simultaneously with Meyer's statement, officers inside the residence discovered the material. In addition to locating the suspected C4, an officer located what appeared to be a boxed methamphetamine lab. Upon being confronted with this discovery, Meyer consented to a search of his residence for evidence relating to illegal drug activity. Based on the fruits of the search, the Deputy Flathead County Attorney filed an Information against Meyer charging him with the felony

2

of Operation of an Unlawful Clandestine Laboratory, in violation of § 45-9-132(1), MCA, on December 20, 2002. Meyer was arraigned on January 2, 2003, and pled not guilty.

¶5 On March 3, 2003, Meyer filed a motion to suppress, alleging the search warrant application contained false and stale information, the information provided by the informant was not corroborated, and the contraband seized exceeded the scope of the warrant. The District Court held a hearing on the motion to suppress on April 9, 2003. The following factual scenario was testified to at the hearing and set forth in the search warrant application.

¶6 The unnamed informant contacted Detective Kevin McCarvel, a member of the Northwest Montana Drug Task Force, and stated that between August 14, 2002, and September 9, 2002, an individual was storing C4 in a storage unit in Columbia Falls in order to evade detection by law enforcement. Officers were familiar with this individual because they had recently served search warrants on his residence. The informant stated further that sometime during this same period, she rode along with a woman named Jeanna Speed who transferred the suspected C4 to Meyer's residence. The informant stated that she witnessed Speed take the material from the vehicle, enter Meyer's residence, and return a short time later without the material.

¶7 The informant described the material to Detective McCarvel as approximately eight inches long, one inch wide, one inch in height, gray in color, and wrapped in clear plastic. She provided McCarvel with a description of Meyer and his vehicle, a 1985 Ford Bronco. She gave McCarvel a description of Meyer's residence and later showed McCarvel the residence. The informant gave McCarvel her name, address, telephone number, social security number, and date of birth. She admitted she had used and possessed

3

methamphetamine in the past and had a warrant out for her arrest in another state. She was advised by McCarvel that if any of the information she provided him was false, she could be held both criminally and civilly liable.

¶8 McCarvel contacted Chief Deputy Lynn Ogle of the Flathead County Sheriff's Office who confirmed the informant's description of the material was consistent with C4. McCarvel also confirmed Meyer owned a 1985 Bronco, that the informant's description of Meyer matched his driver's license photo, and that Meyer's parents owned the property described by the informant.

¶9 On May 20, 2003, District Judge Ted O. Lympus denied Meyer's motion to suppress the evidence obtained during the search of his residence. The court determined the information provided by the informant was sufficient to support probable cause for the issuance of the search warrant. Specifically, the court determined the informant's admission that she participated in the transfer of the suspected C4 to Meyer's residence was an unequivocal statement against interest and this, coupled with the fact her information was based on firsthand knowledge, was a sufficient basis to determine the existence of probable cause. The court determined the informant's statement that the C4 had been transferred 40 to 66 days previously did not render the information stale as to be unusable as a basis upon which to determine probable cause. The court concluded that, based on the totality of the circumstances, Meyer's consent to search was valid.

¶10 On May 23, 2003, Meyer pled guilty, pursuant to a plea agreement, to the offense of Unlawful Operation of a Clandestine Laboratory, a felony. He received a sentence of ten years, with five years suspended. Defendant now appeals from the District Court's order

denying his motion to suppress.

STANDARD OF REVIEW

¶11 We review a district court's denial of a motion to suppress "to determine whether the court's findings of fact are clearly erroneous and whether its interpretation and application of the law are correct." *City of Cut Bank v. Bird*, 2001 MT 296, ¶ 9, 307 Mont. 460, ¶ 9, 38 P.3d 804, ¶ 9. Further, as a reviewing court, this Court's function is to ultimately ensure the issuing judge had a "substantial basis" to determine probable cause existed before issuing the search warrant. *State v. Reesman*, 2000 MT 243, ¶ 19, 301 Mont. 408, ¶ 19, 10 P.3d 83, ¶ 19 (citations omitted). A judge's determination of probable cause is given great deference and every reasonable inference possible will be drawn to support that determination. *Reesman*, ¶ 19. The pertinent facts in this case are undisputed and, as a result, we address whether the District Court correctly applied the law in concluding probable cause existed to support the search warrant executed on Meyer's residence.

DISCUSSION

¶12 **Did the District Court err in concluding the search warrant executed on Meyer's residence was supported by probable cause and denying Meyer's motion to suppress on that basis?**

¶13 Meyer raises three reasons why his motion to suppress was wrongly denied. First, he claims the search warrant application contained an insufficient factual basis upon which the issuing magistrate could determine probable cause existed. Second, Meyer claims the informant's statements to Detective McCarvel were not "statements against interest" so as to relieve the officers from the responsibility of corroborating the information. Last, Meyer

argues that since the initial search was unlawful, his consent to search was not voluntary.

¶14    We conclude the District Court did not err in denying Meyer's motion to suppress. Specifically, the search warrant application was sufficient on its face to support a finding of probable cause and no further corroboration of the informant's information was necessary. Since we have determined the search warrant was properly issued, Meyer's last argument regarding consent fails and will not be addressed.

**A.  The Search Warrant Application.**

¶15    A judge shall issue a search warrant to a person upon application, in writing or by telephone, made under oath or affirmation, that (1) states facts sufficient to support probable cause to believe that an offense has been committed; (2) states facts sufficient to support probable cause to believe that evidence, contraband, or persons connected with the offense may be found; (3) particularly describes the place, object, or persons to be searched; and (4) particularly describes who or what is to be seized. Section 46-5-221, MCA.

¶16    Meyer correctly points out that the District Court misquoted this statute in its conclusions of law; however, this harmless error was not a misstatement of the law, but rather a paraphrasing of the statute's requirements.

¶17    The search warrant application alleged Meyer violated § 45-8-335, MCA, which provides:

> **Possession of explosives**. (1) A person commits the offense of possession of explosives if he possesses, manufactures, transports, buys, or sells an explosive compound, flammable material, or timing, detonating, or similar device for use with an explosive compound or incendiary device and: (a) has the purpose to use such explosive, material, or device to commit an offense; or (b) knows that another has the purpose to use such explosive, material, or device to commit an offense.

6

¶18	Meyer asserts the application when viewed on its four corners did not state facts sufficient to support a finding of probable cause that the offense of possession of explosives had been committed. Meyer's reasoning is that this offense requires both possession of explosives and the purpose to use them or the knowledge someone else will use them. Meyer asserts that since no facts were alleged in the search warrant application showing purpose or knowledge, the issuing judge's determination that probable cause existed was incorrect.

¶19	In denying Meyer's motion, the District Court relied on an evidentiary statute, § 45-8-337, MCA, which provides that possession of a bomb or similar device charged or filled with one or more explosives is prima facie evidence of a purpose to use the same to commit an offense. Meyer argues this statute should have been in the search warrant application and since it was not, the application was not sufficient. Meyer argues further that C4 does not qualify as a bomb or similar device.

¶20	The State's position is the warrant application need only state facts sufficient to support probable cause to believe the C4 was delivered to and still located at Meyer's residence. The State argues the mental state element of an offense need not be proven before the issuance of a search warrant because the law "does not require that the occupant be guilty of any offense and need only be supported by probable cause to believe that the items sought will be found in the place to be searched and that these are seizable by being adequately connected with criminal behavior." *State v. Sundberg* (1988), 235 Mont. 115, 119, 765 P.2d 736, 739. The State asserts the warrant application gave the District Court a substantial basis to believe Meyer had an unlawful purpose for possessing the C4.

7

¶21    In order for a search warrant to be issued, facts sufficient to show probable cause must be stated in the application.  In determining whether probable cause exists, this Court follows the "totality of the circumstances" test set forth in *Illinois v. Gates* (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527.  Under this test, to determine whether a search warrant should be issued, the judge evaluates the facts asserted within the four corners of the application and makes a practical, commonsense decision as to whether there is a fair probability that incriminating items will be found in the place to which entry is sought. *Reesman*, ¶ 24 (citations omitted).

¶22    While we have adopted the "totality of the circumstances" test, it is clear that probable cause must exist for the search of the particular location for which the search warrant is obtained.  *State v. Kaluza* (1995), 272 Mont. 404, 406-407, 901 P.2d 107, 109 (*Kaluza II*) (citing *State v. Kaluza* (1993), 262 Mont. 360, 362, 865 P.2d 263, 264 (*Kaluza I* )).  It is well-settled that the evidence sufficient to establish probable cause for a  warrant is significantly less than that required to support a conviction.  All that need be shown is "a probability of criminal conduct." *State v. Kelly* (1983), 205 Mont. 417, 431, 668 P.2d 1032, 1040 (citation omitted).  Further, probable cause to believe that an offense has been committed by a suspect is a separate question from whether probable cause exists to search the suspect's residence.  *Kaluza II*, 272 Mont. at 407, 901 P.2d at 109 (citation omitted).

¶23    Meyer's argument misstates the probable cause necessary to search a residence. Meyer's claim is, in essence, that every element of an offense be alleged in order to support a finding of probable cause; this is not so.  It is sufficient that a fair probability exists that incriminating items will be found in the place to which entry is sought.  *Kelly*, 205 Mont. at

8

440, 668 P.2d at 1044. The State's search warrant application stated facts supporting probable cause to believe contraband connected with the offense of illegal possession of explosives would be found at the residence. Specifically, the application included the informant's observation of Speed's delivery of the suspected C4 to Meyer's residence. The application also described with particularity the place to be searched and what was to be seized. This is all that is necessary to meet the requirements under § 46-5-221, MCA, to establish probable cause to support a search of Meyer's residence.

¶24 Meyer's next argument is that since the application failed to state when McCarvel received the information from the informant and failed to provide a specific enough time frame when the alleged offense took place, the warrant is invalid. The State argues continuing offenses, such as possession, may require extended time frames and the time frame given in this case was adequate to support a finding of probable cause.

¶25 An "affidavit must set forth facts sufficient to show that a law is being violated at the time the warrant is issued." *State ex rel. Townsend v. District Court* (1975), 168 Mont. 357, 362, 543 P.2d 193, 196. While no reference to the time of the alleged offense will render an affidavit ineffective, a specific date is not required. *See Kelly*, 205 Mont. at 433, 668 P.2d at 1041. "When a criminal activity is continuing in nature, however, more time may elapse between the observation of the activity and the application for the search warrant without negating probable cause." *State v. Rinehart* (1993), 262 Mont. 204, 214, 864 P.2d 1219, 1225 (upholding warrant based on information received two months prior to issuance).

¶26 Meyer's argument is without merit. The search warrant application in this case did make mention of a specific time frame when the alleged offense occurred–sometime between

August 14, 2002, and September 9, 2002–which was 40-66 days prior to the issuance of the search warrant. It is not necessary that the application state the date on which McCarvel received the information; it is sufficient to allege the specific time frame related by the informant.

¶27 Thus, under the totality of the circumstances, the search warrant application was sufficient when viewed on its four corners to support a finding of probable cause.

## B. The Informant.

¶28 The State argues there was no need for law enforcement to corroborate the informant's statements because her information was based on firsthand knowledge, and she admitted to several instances of criminal activity, specifically, illegally transporting explosives and using and possessing methamphetamine. The State asserts further, that while no corroboration was necessary, the officers did confirm many of her allegations anyway.

¶29 Meyer concedes an informant who admits to criminal activity alleviates the need for corroboration. *State v. Adams* (1997), 284 Mont. 25, 34, 943 P.2d 955, 960. However, Meyer contends the informant was not guilty of the crime of transporting explosives and thus corroboration was necessary. To support this argument, Meyer argues that evidence of unlawful purpose is necessary to establish the offense of illegal possession of explosives was committed.

¶30 Meyer next asserts the informant's statements were based on hearsay and thus needed to be corroborated. Meyer also contends the informant's admission to using and possessing methamphetamine is not related to the alleged underlying offense asserted in the search warrant and is therefore not a sufficient admission against interest as to negate the need for

10

corroboration.

¶31 Independent corroboration is not required for a reliable informant whose identity is known to law enforcement and whose information is not based on hearsay. *Reesman*, ¶¶ 28-31. An informant who gives an unequivocal admission against interest is deemed reliable without further corroboration. *Reesman*, ¶ 33. A statement against interest is defined as a statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. Rule 804(b)(3), M.R.Evid.

¶32 In this case, Detective McCarvel knew the informant's identity, including her address, telephone number, social security number, and date of birth. Further, the physical description she gave Detective McCarvel of the suspected C4 was based on her personal observation. She witnessed Jeanna Speed deliver the material to the Defendant's house. Thus, the informant was a known informant whose statements were based on firsthand knowledge. Further, the informant admitted to transporting an illegal explosive, an act we can assume she reasonably believed would subject her to criminal liability because she felt Meyer's possession of the material was worthy of reporting in the first place. Thus, the informant's admission to transporting the alleged explosive was an unequivocal statement against interest, which renders her statements reliable and negates the need for corroboration.

¶33 We hold the informant's statements to Detective McCarvel did not need to be corroborated because her identity was known, the relevant statements made to McCarvel were based on firsthand knowledge, and her unequivocal statements against interest qualified

11

her as a reliable informant.

¶34   We decline to discuss whether admissions regarding offenses unrelated to the underlying offense of the defendant may be classified as an admission against interest. Further, because we conclude no corroboration was necessary, we will not discuss the merits of the corroboration efforts attempted by McCarvel.

¶35   In sum, we hold the District Court correctly concluded the search warrant was supported by probable cause and, therefore, properly denied Meyer's motion to suppress.

¶36   Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ JIM RICE
/S/ JAMES C. NELSON