No. 05-202

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 211

_____

STATE OF MONTANA,

        Plaintiff and Respondent,

    v.

LEN RAY ZITO,

        Defendant and Appellant.

_____

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and for the County of Ravalli, Cause No. DC 03-173
The Honorable Jeffrey H. Langton, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Mathew M. Stevenson, Attorney at Law, Missoula, Montana

        For Respondent:

            Hon. Mike McGrath, Attorney General; Jim Wheelis, Assistant Attorney
General, Helena, Montana

            George Corn, County Attorney; William E. Fulbright, Deputy County
Attorney, Hamilton, Montana

_____

Submitted on Briefs:  December 13, 2005

Decided:  August 29, 2006

Filed:

_____
Clerk

Justice John Warner delivered the Opinion of the Court.

¶1     Defendant Len Ray Zito appeals the order of the Twenty-First Judicial District Court, Ravalli County, denying his motion to suppress evidence seized under a search warrant, suppress statements made to law enforcement upon his arrest, and dismiss this case. We affirm.

¶2     On November 17, 2004, pursuant to a plea agreement, Zito pled guilty to several drug related felonies and a misdemeanor, reserving his right to appeal the denial of his motions to suppress and dismiss.

¶3     Zito moved to suppress all evidence obtained by virtue of a search of his property on October 23, 2003, pursuant to a search warrant issued the previous day. He also moved to suppress statements he made to law enforcement at the time of his arrest. The motion was heard, and on April 9, 2004, the District Court entered its findings of fact and conclusions of law and order denying Zito's motions.

¶4     Ravalli County Sheriff's Detective Jase Basnaw applied for and was granted a search warrant for Zito's property on October 22, 2003, the same day a confidential informant had reported seeing marijuana plants at Zito's residence. The warrant was issued by the Ravalli County Justice Court. On October 23, 2003, several members of the Ravalli County Sheriff's Office, including Detective Basnaw, and officers from the Montana State Division of Criminal Investigation executed the search warrant. The search resulted in the confiscation of approximately fifty marijuana plants located in an abandoned basement, under a canopy, and in several other places unobservable from the air. The marijuana plants were in the process of being harvested and dried. The search

2

also produced paraphernalia related to the production and use of marijuana, as well as a number of guns. Zito was found hiding in a gully approximately two hours after the search commenced.

¶5    Upon consideration of the affidavit in support of the search warrant, the reviewing District Court found the facts supporting the warrant to be as follows:

(1) On September 18, 2003, a concerned citizen informed Detective Basnaw that Mr. Zito was growing marijuana at his place. This tip was not based on personal observation.

(2) On September 29, 2003, CI [Confidential Informant] met with Detective Basnaw and informed him that Mr. Zito currently had a grow operation at his place, under a yellow tarp in front of his residence and in a pump house. CI said that plants were budding and ready for harvest. CI, by virtue of the absence of a sworn statement attesting to CI's veracity, is not deemed a reliable informant. CI's tip was not based on CI's personal observation.

(3) On October 1, 2003, Detective Basnaw flew over the property and took photographs of planter boxes, several pots, and a yellow tarp in front of Mr. Zito's residence. The cultivation indicia were obscured from view on the ground by natural barriers and junk vehicles.

(4) On October 1, 2003, following the flight, Detective Basnaw met with CI and showed CI the photographs. CI confirmed the area in the photos where the marijuana was grown, identified the planter boxes as the site where marijuana was grown during the summer of 2002, gave the reason for the use of the tarp as provided by Mr. Zito's sons, and identified an unfinished, covered basement in the photos as the location for hanging the plants to dry. Except for identifying the planter boxes, CI's information was not based on personal observation.

(5) On October 4, 2003, CI informed Detective Basnaw that CI had been to Mr. Zito's residence, and although CI was not in a position to see the marijuana plants, CI smelled them.

(6) On October 22, 2003, CI informed Detective Basnaw that CI had been to Mr. Zito's residence and had seen approximately 30[,] four to five foot long marijuana plants hanging on the south wall of the unfinished basement.

3

(7) Mr. Zito has a prior drug-related criminal conviction.

(8) Viewing all these facts through the lens of his significant training and experience, Detective Basnaw concludes that Mr. Zito is growing marijuana.[1]

¶6　We review a district court's denial of a motion to suppress to determine whether the court's findings of fact are clearly erroneous and whether its interpretation and application of the law are correct. *State v. Meyer*, 2004 MT 272, ¶ 11, 323 Mont. 173, ¶ 11, 99 P.3d 185, ¶ 11; *State v. Martinez,* 2003 MT 65, ¶ 19, 314 Mont. 434, ¶ 19, 67 P.3d 207, ¶ 19. Zito does not challenge the factual findings relevant to the search warrant, thus we address whether the District Court properly applied the law in concluding that the affidavit in support of the warrant was sufficient to establish probable cause.

¶7　We have adopted the "totality of the circumstances" test set forth in *Illinois v. Gates* (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527, to evaluate whether probable cause supported the issuance of a warrant. *State v. Barnaby*, 2006 MT 203, ¶ 29, 333 Mont. 220, ¶ 29, ___ P.3d ___, ¶ 29; *State v. Reesman*, 2000 MT 243, ¶ 24, 301 Mont. 408, ¶ 24, 10 P.3d 83, ¶ 24. Under the totality of the circumstances test, the issuing judicial officer must make a practical, common sense determination, given all the evidence contained in the application for a search warrant, whether a fair probability exists that contraband or evidence of a crime will be found in a particular place. *Barnaby*, ¶ 29; *Reesman*, ¶ 24; *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548.

---

[1] The remainder of the search warrant application was excised by the reviewing District Court.

4

¶8 Our function as a reviewing court is to ensure ultimately that the issuing judicial officer had a "substantial basis" to determine probable cause existed before issuing the search warrant. *Barnaby*, ¶ 30. However, it is critical in our review that a judicial officer's determination that probable cause exists be paid great deference and every reasonable inference possible be drawn to support that determination. *Reesman,* ¶ 19; *Gates*, 462 U.S. at 236, 103 S.Ct at 2331, 76 L.Ed.2d at 547 ("magistrate's determination of probable cause should be paid great deference by reviewing courts.") (internal quotation omitted).

¶9 An application for a search warrant must state facts sufficient to show probable cause to issue a warrant. *Barnaby*, ¶ 30. A determination of probable cause does not require facts sufficient to make a showing of criminal activity; rather, the issuing judicial officer must only determine that there exists a probability of criminal activity. *Barnaby*, ¶ 30; *State v. Rinehart* (1993), 262 Mont. 204, 210, 864 P.2d 1219, 1222. Probable cause must be determined solely from the information contained within the search warrant application. *Barnaby*, ¶ 30; *Rinehart*, 262 Mont. at 211, 864 P.2d at 1223.

¶10 The affidavit in support of the warrant in this case stated the informant had told Detective Basnaw that he had been to Zito's property about eighteen days prior, and he had smelled marijuana plants there. Further, this same informant told Detective Basnaw that he had been on the subject property the same day the affidavit was presented, and had seen over thirty marijuana plants. The informant was not anonymous, and the information he provided was not hearsay. Thus, if the informant could be shown to be reliable, there was probable cause to issue the search warrant. *Reesman*, ¶ 31.

5

¶11 Detective Basnaw's affidavit in support of the warrant stated that the informant had a documented history with marijuana, and that Detective Basnaw knew from experience that the informant would recognize marijuana. The affidavit also detailed the relevant information provided by the informant as noted above in ¶¶ 5 and 10. However, the affidavit did not expressly state that the informant had provided reliable information in the past, was making a statement against his interest, or was acting as a concerned citizen. *See Reesman*, ¶¶ 32-35. Where such a statement is lacking, a confidential informant's information regarding criminal activity requires further corroboration in order to supply a judicial officer with a sufficient substantial basis for a probable cause determination. *State v. St. Marks*, 2002 MT 285, ¶ 25, 312 Mont. 468, ¶ 25, 59 P.3d 1113, ¶ 25.

¶12 The corroboration must reveal indicia of human conduct that becomes suspicious when viewed in conjunction with the incriminating information received from the informant. *State v. Griggs*, 2001 MT 211, ¶ 50, 306 Mont. 366, ¶ 50, 34 P.3d 101, ¶ 50. In order to reveal this indicia of suspicious conduct, officers may investigate and corroborate otherwise innocent and non-criminal activity with further observations and evidence of otherwise innocent and non-criminal activity. *Griggs*, ¶ 50. Here, the police flew over Zito's property and confirmed the informant's description of the suspect areas, including the yellow tarp and junk cars that obscured areas of the premises where the marijuana was said to be grown. The informant's statements describing planter boxes and pots, and their placement and location, were also confirmed.

¶13 The flyover corroborated the reliability of the informant's information in two ways. First, it showed that he knew, in detail, the layout of Zito's property, which confirmed that he had been there as he had told Detective Basnaw. Second, it provided confirmation of information that, although innocent by itself, was consistent with a marijuana grow operation, when considered in conjunction with the prior tip that such activity was taking place there and the subsequent tip that there were over thirty marijuana plants located on Zito's property.

¶14 The fact that the confidential informant's tip that he had seen marijuana on Zito's property came after the flyover does not negate the corroborative value of this information. Information that over thirty marijuana plants were seen drying in the basement was entirely consistent with the earlier report made before the flyover that the plants were "budding and ready for harvest." Further, the fact that information in the earlier report was not based on personal observation, does not preclude a finding of reliability through independent corroboration. *See State v. Gray*, 2001 MT 250, ¶¶ 4, 21, 307 Mont. 124, ¶¶ 4, 21, 38 P.3d 775, ¶¶ 4, 21 (innocent facts were sufficient to corroborate information from a confidential informant who had not personally observed any criminal activity).

¶15 Further, Detective Basnaw stated in his affidavit that he knew from training and experience that the strategic placement of the junk vehicles and tarps was indicative of secluding an area for illegal activity. A district court may consider the judgment and experience of a law enforcement officer in its determination of the significance of innocent facts and their consistency with the reported criminal activity. *Gray*, ¶ 32

(citing *Gates*, 462 U.S. at 231-232); *see also St. Marks*, ¶ 36 ("We conclude we should lend credence to [investigating officer's] judgment. His experience and training provided a reasonable basis for his conclusions concerning [defendant's] behavior.").

¶16 Another routine piece of information indicating police corroboration is criminal background checks. *Reesman*, ¶ 45. Law enforcement investigated and found that Zito had a prior drug-related criminal conviction. This court has held that one's criminal history is "one of the many factors to be considered under the totality of the circumstances test." *State v. Johnson* (1995), 271 Mont. 385, 390, 897 P.2d 1073, 1076-1077 (quoting *State v. Hook* (1992), 255 Mont. 2, 6, 839 P.2d 1274, 1277); *State v. Morse*, 2006 MT 54, ¶ 18, 331 Mont. 300, ¶ 18, 132 P.3d 528, ¶ 18; *State v. Anderson*, 1999 MT 60, ¶¶ 12-14, 293 Mont. 490, ¶¶ 12-14, 977 P.2d 983, ¶¶ 12-14; *see also Gray*, ¶¶ 20-21 (criminal history of accomplice, involving dangerous drugs, supported corroboration and probable cause).

¶17 Finally, at least one concerned citizen had informed Detective Basnaw that Zito was growing marijuana, albeit such information was not based on personal observation. While this tip from a concerned citizen would not be adequate to support probable cause without further investigation, it still had some probative value in determining probable cause, under the totality of the circumstances test. *St. Marks*, ¶ 41; *see also State v. Holstine* (1993), 260 Mont. 310, 315, 860 P.2d 110, 113 ("Factors which are of little probative value alone, however, when taken together under the *Gates* 'totality of the circumstances' test, provide the basis for a determination of substantial evidence to conclude probable cause existed to issue the search warrant.").

¶18     The facts garnered from the flyover are indicia of human conduct that legitimately became suspicious to the issuing judicial officer when considered along with the personal observations of the informant, the drug-related criminal history of the property's occupant, the tip from a concerned citizen, and the opinion of a detective with substantial experience and training in dangerous drug related activities. *See Gray*, ¶ 21 (innocent facts that defendant's home had four new air vents, which based on detective's experience were required for a grow operation; his utility records evidenced a surge in power usage; his alleged accomplice had a criminal history; and his brother, a known drug user, frequented the residence, were sufficient to corroborate information from a confidential informant who had not personally observed any criminal activity); *St. Marks*, ¶¶ 34-37 ("independent corroboration of [defendant's] motel room number, together with his method of payment [cash] and the fact that he had a local address, added to [his] suspicious character . . . when taken as a whole with the . . . three anonymous phone calls and [alleged partner's] arrest and possession of . . . cocaine."); *see also Morse*, ¶ 17 (innocent fact of possessing an empty digital scale box, considered in the context of the search warrant, sufficiently corroborated information from anonymous informants that defendant was selling drugs); *State v. Palmer*, 2003 MT 129, ¶¶ 21-23, 316 Mont. 46, ¶¶ 21-23, 68 P.3d 809, ¶¶ 21-23 (video surveillance revealed no actual criminal activity, but when coupled with training and experience of narcotics officer, sufficiently corroborated incriminating information received from informant); *Hauge v. District Court*, 2001 MT 255, ¶ 25, 307 Mont. 195, ¶ 25, 36 P.3d 947, ¶ 25 ("Officer . . . sufficiently corroborated the CI's information by verifying the identities of the occupants of the trailers and the

9

ownership of the vehicles; . . . by personally observing the mobile homes on three separate occasions and finding the traffic patterns to be just as the CI described; and by contacting a neighbor who had previously complained of drug activity and heavy traffic in the area and confirming that the traffic patterns still continued.").[2]

¶19 Considering the totality of the circumstances, we conclude that the District Court did not err in denying Zito's motion to suppress the evidence secured by execution of the search warrant.

¶20 We next consider Zito's argument that all statements he made to law enforcement must be suppressed pursuant to § 46-6-107, MCA, and *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, which require that before being questioned, a person in custody must be advised that his statements may be used against him and that he has the right to consult with an attorney.

¶21 Zito was not questioned by the first deputy who took him into custody or any other law enforcement officer when he was first apprehended. Then, moments after Zito had been taken into physical custody, Detective Basnaw identified himself to Zito and told him that the sheriff's office was executing a search warrant for a "marijuana grow

---

[2] The present case is unlike *Griggs*, where the "innocent facts" corroborated by law enforcement were totally unrelated to the suspected criminal activity. In *Griggs*, the corroboration of the defendant's address, the fact that he used to be in the military, he drove a Ford truck, and that his trailer home had new trim, failed "to supply the magistrate with any indicia of human conduct even remotely associated with the criminal activity alleged by the anonymous informant–that [defendant] was cultivating psilocybin mushrooms in his private residence for the purpose of distribution in some manner." *Griggs*, ¶¶ 7, 51. As discussed above, the corroborated facts relating to Zito were clearly pertinent to the harvesting of marijuana, and confirmed as such by an experienced narcotics detective.

operation." Zito responded with the gratuitous statement that he had a "medical grow." Detective Basnaw did not question Zito about this statement at that time, but only asked Zito if he had any weapons on his person. Zito responded that he had a back injury. He was then escorted to a police vehicle were he was read his *Miranda* rights and questioned by Detective Basnaw, who recorded the conversation. Zito contends that because his statement regarding the medical grow was made while he was in custody and prior to being Mirandized, the statement could not later be used to elicit further statements, after he had been given his rights.[3]

¶22 The *Miranda* warnings are not required to be given by law enforcement unless one is subject to a custodial interrogation. *State v. Reavley*, 2003 MT 298, ¶ 18, 318 Mont. 150, ¶ 18, 79 P.3d 270, ¶ 18; § 46-6-107, MCA. A custodial interrogation is defined as,

---

[3] The relevant portion of the taped interview, in which Zito claims Basnaw elicited further information in violation of *Miranda*, immediately followed his *Miranda* warning, and reads as follows:

> Detective Basnaw: . . . Um, basically y [sic], you're aware of why we're here?
>
> Len Zito: Yep.
>
> Detective Basnaw: And we kinda' talked there.
>
> Len Zito: Yeah.
>
> Detective Basnaw: Uh, when I mentioned it to you you did say that you do have a medical grow uh, for your, yourself and you have some injuries?
>
> Len Zito: Yeah.

"questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way[.]" *Reavley*, ¶ 18 (quoting *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706). There is no dispute that Zito was in custody at the time he made the statement to Detective Basnaw that he had a "medical grow." However, the record is clear that Zito was not questioned by any law enforcement officer, or otherwise coerced or induced to make the statement in question. Since there was no interrogation, the statement does not fall under the auspices of *Miranda*. *See State v. Thompson* (1989), 237 Mont. 384, 387, 773 P.2d 722, 724; *State v. DePue* (1989), 237 Mont. 428, 430-432, 774 P.2d 386, 388-389. Because the initial statement was not elicited in violation of Zito's constitutional rights, we need not consider the argument that it somehow tainted subsequent statements. Thus, the District Court did not err in denying Zito's motion to suppress his statements.

¶23　　Affirmed.

/S/ JOHN WARNER

We Concur:

/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS
/S/ JIM RICE

12

Justice James C. Nelson specially concurs.

¶24    I concur in the Court's opinion, with the following caveats.

¶25    First, the Court correctly articulates our function as a reviewing court: "to ensure ultimately that the issuing judicial officer had a 'substantial basis' to determine probable cause existed before issuing the search warrant." ¶ 8; *see also Illinois v. Gates* (1983), 462 U.S. 213, 238-39, 103 S.Ct. 2317, 2332 ("[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." (ellipsis and second alteration in original)).  However, the Court goes on to state, without qualification, that "it is critical in our review that a judicial officer's determination that probable cause exists be paid great deference and every reasonable inference possible be drawn to support that determination." ¶ 8 (citing *State v. Reesman*, 2000 MT 243, ¶ 19, 301 Mont. 408, ¶ 19, 10 P.3d 83, ¶ 19, and *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331).  While I do not dispute this statement as a general standard guiding our review, it is essential to clarify that such deference is not boundless:

> It is clear, first, that the deference accorded to a magistrate's finding of probable cause does not preclude inquiry into the knowing or reckless falsity of the affidavit on which that determination was based.  Second, the courts must also insist that the magistrate purport to "perform his 'neutral and detached' function and not serve merely as a rubber stamp for the police."  A magistrate failing to "manifest that neutrality and detachment demanded of a judicial officer when presented with a warrant application" and who acts instead as "an adjunct law enforcement officer" cannot provide valid authorization for an otherwise unconstitutional search.
>
> Third, reviewing courts will not defer to a warrant based on an affidavit that does not "provide the magistrate with a substantial basis for determining the existence of probable cause."  "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of

14

others." Even if the warrant application was supported by more than a "bare bones" affidavit, a reviewing court may properly conclude that, notwithstanding the deference that magistrates deserve, the warrant was invalid because the magistrate's probable-cause determination reflected an improper analysis of the totality of the circumstances, or because the form of the warrant was improper in some respect.

*United States v. Leon* (1984), 468 U.S. 897, 914-15, 104 S.Ct. 3405, 3416-17 (citations and footnotes omitted).

¶26 Thus, we must *review*—and not simply defer to—the judicial officer's determination of probable cause. In the case at hand, we must determine whether Detective Basnaw provided the Ravalli County Justice Court with sufficient information to allow the reviewing judicial officer to determine probable cause and whether the judicial officer's probable-cause determination reflected a proper analysis of the totality of the circumstances.

¶27 With these principles in mind, the application for search warrant at issue here is not a model of clarity. As demonstrated by the District Court's distillation of the numerous statements in Detective Basnaw's application to a few salient probable cause facts, the application contains entirely too much irrelevant "filler," not to mention the copious conclusory, speculative, and unsupported assertions.

¶28 Nevertheless, the application involves a much closer call than did the search warrant application that this Court recently approved in *State v. Barnaby*, 2006 MT 203, 333 Mont. 220, ____ P.3d ____, *see Barnaby*, ¶¶ 72-191 (Nelson, J., dissenting); and at least here—unlike in *Barnaby*—there was a reasonable attempt to apply the framework set forth in *Reesman*. Viewing Detective Basnaw's application under the totality-of-the-

circumstances approach, I agree with the Court that the District Court properly interpreted and applied the law in concluding that the reviewing judicial officer had a substantial basis for determining that probable cause existed. *See Reesman*, ¶ 18 ("[T]he standard of review of a district court's denial of a motion to suppress is whether the court's interpretation and application of the law is correct." (citing *State v. Hubbel* (1997), 286 Mont. 200, 207, 951 P.2d 971, 975)). Accordingly, the District Court did not err in denying Zito's motion to suppress.

¶29 That said, Zito's having "a prior drug-related criminal conviction" five years earlier[1] is, in my view, of negligible value in assessing probable cause to issue a warrant to search his property. *See State v. Tackitt*, 2003 MT 81, ¶ 41, 315 Mont. 59, ¶ 41, 67 P.3d 295, ¶ 41. I therefore do not agree with the Court's reliance on this information in ¶ 16. I also do not agree with the Court's suggestion in ¶ 11 that an applicant's bare assertion that he "kn[ows] from experience that [an] informant would recognize marijuana" (by sight? by smell?) is a sufficient basis on which to credit that informant's identification of something observed or smelled as marijuana. Some background information substantiating the applicant's knowledge of the informant's ability should be included. As it turns out, Detective Basnaw did include such background information, which the Court oddly has omitted from its Opinion: "CI . . . admits to having used marijuana in the past."

---

[1] Detective Basnaw discloses in the application, dated October 22, 2003, that "Zito's criminal history shows that he was arrested in September of 1997 and eventually convicted for criminal possession of dangerous drug paraphernalia."

¶30 Lastly, for the reasons set forth at length in my dissent in *Barnaby*, *see Barnaby*, ¶¶ 72-191 (Nelson, J., dissenting), I cannot join any part of today's Opinion that relies on that case. I am satisfied that the *Reesman* standards—or whatever is left of them—were met here. For this reason only, and with the foregoing caveats, I concur.

/S/ JAMES C. NELSON

Chief Justice Gray, specially concurring.

¶31 I join in the substance of Justice Nelson's special concurrence insofar as it relates solely to this case. I do not join in his references to *Barnaby* or his views on that case.

/S/ KARLA M. GRAY